[Civ. No. 18562. Fourth Dist., Div. One. May 22, 1979.]

FRANCES OLGA REUTER, Individually and as Executrix, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
TAG ENTERPRISES, Real Party in Interest.

COUNSEL

Popko & Cornblum and Hugh D. McLean for Petitioners.

No appearance for Respondent.

McInnis, Fitzgerald, Rees & Sharkey and John F. McGuire for Real Party in Interest.

**OPINION**

**COLOGNE, J.**—Petitioners Frances Reuter (mother) and Albrecht Reuter II (son) are plaintiffs in an action pending before the respondent court. The lawsuit arises from an automobile accident in which the son

was injured and his father killed. Real party in interest is a defendant in that action.

The mother serves in three capacities in the suit: individually in her cause of action for wrongful death (Code Civ. Proc., § 377); as executrix of the estate of her husband (Prob. Code, § 573); and as guardian ad litem for her son in his cause of action for personal injuries.

Real party moved for and received an order from respondent pursuant to Code of Civil Procedure[1] section 2032 compelling: (a) the mother to submit to a battery of psychological tests to be administered by a psychologist, and (b) the son to submit to these same tests and additionally submit to interviews with a child psychiatrist.

Petitioners claim respondent abused its discretion in granting these examinations on the grounds that a psychologist is not a "physician" as required by section 2032 and the mother's mental state is not "in controversy." Section 2032 is set forth in the margin.[2]

---

[1]All references to sections are to the Code of Civil Procedure unless otherwise noted.

[2]"(a) In an action in which the mental or physical condition or the blood relationship of a party, or of an agent or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician or to produce for such examination his agent or the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"(b)(1) If requested by the party against whom an order is made under subdivision (a) of this section or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings and conclusions, together with like reports of all earlier examinations of the same condition. After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party or persons examined a like report of any examination, previously or thereafter made, of the same condition. If the party or person examined refuses to deliver such report the court on motion and notice may make an order requiring delivery on such terms as are just, and if a physician fails or refuses to make such a report the court may exclude his testimony if offered at the trial.

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party against whom an order is made under subdivision (a) of this section or the person examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same condition.

"(3) Unless otherwise agreed, the provisions of subdivisions (b)(1) and (2) of this section shall be applicable in cases where an examination is made pursuant to stipulation.

"(c) Service upon a party of any notice, motion or order made under this section may be made upon any party or his attorney in the manner provided in Chapter 5, Title 14, Part 2 (commencing at Section 1010) of this code." (Code Civ. Proc., § 2032.)

■ Mandamus has long been available "to prevent improper discovery proceedings, including physical examinations." (*Harabedian* v. *Superior Court,* 195 Cal.App.2d 26, 30 [15 Cal.Rptr. 420, 89 A.L.R.2d 994], and cases cited.)[3] The Supreme Court, however, has limited the scope of review in discovery matters generally. The court noted in *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 185-186, footnote 4 [23 Cal.Rptr. 375, 373 P.2d 439], "[T]he prerogative writs should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases."

An exception to this limitation on review by writ is found in *Pacific Tel. & Tel. Co.* v. *Superior Court,* 2 Cal.3d 161, 171, footnote 11 [84 Cal.Rptr. 718, 465 P.2d 854], in cases in which "an order granting discovery violates a privilege [citation] or intrudes upon a constitutionally secured right to privacy."

The present case is appropriate for writ review since we have found no cases, nor have counsel directed us to any, which specify the guidelines to be used in this type of situation, and the mother has alleged her right of privacy is being violated by the grant of discovery.

In construing statutes: "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] . . . 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.,* 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

---

[3]Section 2032 addresses both physical and mental examinations. Distinctions have been made between the two types of examinations for certain purposes such as establishing the right to have counsel present during the examination (see *Sharff* v. *Superior Court,* 44 Cal.2d 508, 511 [282 P.2d 896, 64 A.L.R.2d 494], holding a party need not submit to a physical examination without the presence of his attorney; but see *Edwards* v. *Superior Court,* 16 Cal.3d 905, 909-912 [130 Cal.Rptr. 14, 549 P.2d 846], holding counsel's presence not required during a mental examination). We believe, however, no policy reasons require us to differentiate between the two types of examinations in determining the scope of the term "physician" and the phrase "in controversy." Therefore, we will cite authority concerning the two types of examinations interchangeably.

■ Discovery statutes in particular are to be construed liberally in favor of disclosure (*Harabedian* v. *Superior Court, supra,* 195 Cal.App.2d 26, 31, and cases cited).

As section 2032 was substantially based upon rule 35 of the Federal Rules of Civil Procedure (28 U.S.C.) as originally executed,[4] (*Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 375 [15 Cal.Rptr. 90, 364 P.2d 266]), we note a further rule of construction: " 'When legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation. This rule is applicable to state statutes which are patterned after federal statutes.' " (*Agricultural Labor Relations Bd.* v. *Superior Court,* 16 Cal.3d 392, 413-414 [128 Cal.Rptr. 183, 546 P.2d 687], citing *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen,* 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905]).

We will therefore occasionally look for guidance to federal precedent interpreting rule 35.

■ Section 2032 authorizes the court to order a party whose mental state is in controversy to submit to a mental examination by a "physician." The inherent power of our courts to order a physical examination of a plaintiff in a personal injury case was recognized long

---

[4] "(a) *Order for Examination.* In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"(b) *Report of Findings*

"(1) If requested by the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings and conclusions. After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party examined a like report of any examination, previously or thereafter made, of the same mental or physical condition. If the party examined refuses to deliver such report the court on motion and notice may make an order requiring delivery on such terms as are just, and if a physician fails or refuses to make such a report the court may exclude his testimony if offered at the trial.

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition."

before section 2032 was passed in the case of *Johnston* v. *Southern Pacific Co.,* 150 Cal. 535 [89 P. 348]. The statute codified the authority and enlarged the "scope of the examination" (*Harabedian* v. *Superior Court, supra,* 195 Cal.App.2d 26, at p. 31) by adding agents of a party, and persons in the custody or under the legal control of parties, to the category of persons who could be compelled to submit to the examinations. Neither section 2032 nor case authority allow the examination to be conducted by someone other than a physician.[5]

The Code of Civil Procedure does not contain its own definition of physician, so we must look elsewhere. Business and Professions Code section 4033 defines a "physician" as "any person holding a valid and unrevoked physician's and surgeon's certificate or certificate to practice medicine and surgery, issued by the Board of Medical Quality Assurance or the Board of Osteopathic Examiners of this State. . . ." In a licensing sense, a "physician" is one who possesses this physician's and surgeon's certificate. As the Attorney General has aptly pointed out, "for purposes not confined to the Medical Practice Act, any practitioner of the healing arts may be considered to be a 'physician,' depending upon the context in which the term is used." (57 Ops.Cal.Atty.Gen. 79, 80.) We agree this is true but believe the purposes of the statute and the best interest of the plaintiff and defendant are served by limiting the term "physician" in section 2032 to mean a person licensed as a physician and surgeon under the Medical Practice Act.

The party being examined is interested in the examination being performed competently and safely. The party requesting the examination wants a thorough and competent diagnosis. Both parties should desire an accurate appraisal of the damages suffered. The state also has an interest in medical procedure being performed with insured safety (see *Roe* v. *Wade,* 410 U.S. 113, 150 [35 L.Ed.2d 147, 175, 93 S.Ct. 705]). Of all the practitioners of healing arts, the licensed physician has plenary authority to practice medicine. (See 3 Ops.Cal.Atty.Gen. 313.) His practice is not limited to any particular part of the body. He is the practitioner most likely to adequately appraise all of the patient's injuries.

We believe the common meaning of "physician" as generally used applies only to the licensed physician and surgeon. Without any evidence

---

[5] *Dodge* v. *San Diego Electric Ry. Co.,* 92 Cal.App.2d 759, 769 [208 P.2d 37], speaks of "medical experts" and *Sharff* v. *Superior Court, supra,* 44 Cal.2d 508, 510, uses the term "doctor" instead of "physician," but no attempt appears to have been made by these usages to expand the concept beyond what it had previously been.

to demonstrate the Legislature intended the word "physician" to have a meaning other than duly licensed physician, we hold that is what it means for purposes of section 2032.

As applied specifically to mental examinations, although all holders of a physician's and surgeon's certificate may treat mental conditions (Bus. & Prof. Code, § 2137), a psychiatrist is a physician who specializes in mental, emotional or behavioral disorders. (See Webster's New Internat. Dict. (3d ed. 1968) p. 1832; see also 2 Schmidt, Attorney's Dictionary of Medicine (1975) p. P-167.) Thus, compelling a mental examination by a psychiatrist is proper under section 2032.

A psychologist, however, is not licensed as a physician and surgeon. His license requirement is set out in Business and Professions Code section 2903, which is in chapter 6.6 of division 2 of the code. A psychologist is thus not a "physician" as defined under section 2032, and may not conduct a mental examination compelled under that section.

This does not, however, fully answer the question before us. The motion to compel the examination was supported by a declaration of a child psychiatrist to the effect that the testing by a psychologist is necessary to complete his examination of the son. In this circumstance, the capacity of the psychologist is to provide data for the psychiatrist to use. His position is analogous to that of an X-ray technician taking X-rays for a physician to examine or a medical technician taking a patient's blood pressure and reporting the findings to the doctor.

As the Legislature has observed in relation to one type of medical specialist, the nurse, "It is the legislative intent also to recognize the existence of overlapping functions between physicians and registered nurses and to permit additional sharing of functions within organized health care systems . . ." (Bus. & Prof. Code, § 2725.) To prevent a physician from delegating certain duties to competent specialists in accordance with accepted medical practices would be to deny the reality of the modern medical profession.

In the mental health area, the Legislature has recently recognized that psychologists are competent to make determinations in several statutory areas which previously had required the services of a physician or psychiatrist. (See Leg. Counsel's Dig., Stats. 1978 (Reg. Sess.) ch. 391; Civ. Code, § 232; Pen. Code, § 1027; Welf. & Inst. Code, §§ 5251, 5261; see also Lab. Code, § 3209.3.)

While the Legislature has not seen fit to allow psychologists to conduct mental examinations under section 2032, the trial court did not abuse its discretion in ordering a party whose mental condition is in controversy to submit to testing by a psychologist who is working under the general direction of a psychiatrist.

The question remains as to whether petitioners are parties whose mental conditions are in controversy.

■ Petitioners do not dispute, and could not dispute successfully, that the son's mental condition is "in controversy." The son's complaint claims he has suffered "great mental . . . pain and suffering." Such an allegation clearly places his mental condition in controversy. (See *Edwards* v. *Superior Court, supra,* 16 Cal.3d 905, 907.) We hold the respondent court properly required the son to submit to examination by the child psychiatrist and submit to the battery of tests administered by the psychologist for the benefit of the psychiatrist's diagnosis.

■ The requirement of the mother's submission to the psychologist's testing is another matter. The psychiatrist's declaration below stated such testing of the mother was necessary to complete his psychiatric examination of the son. It also noted that the custom and practice of psychiatrists in San Diego and across the country was to interview the parents of a child they are examining and recommend psychological testing where necessary for diagnosis.

It could possibly be stated the mother's mental condition is "medically in controversy" as the declaration suggests the testing of the mother is essential to establish the mental condition of the son. It does not appear, however, the mother has placed her own mental condition in controversy in any legal sense.

Real party, in his opposition to this petition, stipulates that the mother's mental condition is not in controversy. Real party attempts to support the court's order by suggesting the mother's examination is merely "incidental" to the son's examination. Though we are not bound by stipulations as to questions of law (*Glade* v. *Superior Court,* 76 Cal.App.3d 738, 744 [143 Cal.Rptr. 119]; *Leonard* v. *City of Los Angeles,* 31 Cal.App.3d 473, 476 [107 Cal.Rptr. 378], and cases cited), we agree in this instance with both parties that the mother's mental condition is not in controversy.

■ Generally, finding a condition "in controversy" poses no great difficulty. Allegations of physical or mental injury in the complaint and denial of the injury or the extent of injury places the condition in controversy (*Schlagenhauf* v. *Holder,* 379 U.S. 104, 119 [13 L.Ed.2d 152, 164, 85 S.Ct. 234]). The condition need not be first raised in the pleadings though. In *Harabedian* v. *Superior Court, supra,* 195 Cal.App.2d 26, 30, the defendant had admitted during his deposition that he had a congenital defect in one eye, and his vision was blurred. An opthalmological examination was ordered with defendant objecting. The court stated the rule, " 'In determining whether or not there has been an abuse of discretion it should be borne in mind that the Discovery Act is to be liberally construed.' " (At p. 31, citing *Smith* v. *Superior Court,* 189 Cal.App.2d 6, 10 [11 Cal.Rptr. 165, 88 A.L.R.2d 650].) As the two main issues joined by the pleadings in that case were the willful misconduct of the defendant driver in an automobile accident and the negligent entrustment of the vehicle to him by his father, the court found no abuse of discretion in ordering the examination.

In *Whitfield* v. *Superior Court,* 246 Cal.App.2d 81, 83 [54 Cal.Rptr. 505], the court held the pleadings failed to disclose the "mental condition" of the petitioner to be in controversy. Since the parties, however, admitted in the petition for mandamus and respondent's answer that "emotional damage caused to petitioner" was one of the major issues, the court held that the mental condition of petitioner had been placed in controversy within the meaning of section 2032.

It appears a condition may be "in controversy" in ways other than through pleading, but we are unable to find any dispute between the parties as to the mental condition of the mother in her individual capacity.

■ Real party contends the mother's examination is only "collateral" to that of the son. If this argument is suggesting the court has the power to order anyone to submit to examinations regardless of their mental state being in controversy, regardless of their being one of the persons defined by section 2032, we must reject it. We must keep in mind that the mother's examination is required, according to the psychiatrist's declaration, because child psychiatrists normally interview parents when diagnosing a child. The mother is not needed because of any of her three roles as a party in the case. She is needed because she is the mother of her son. She may have influenced his mental state. This influence needs to be

separated from the influence of the accident in appropriately assessing what damages are allocable to any provable negligence of the defendant.

On the other hand, many different parties may be the main influence in any particular persons' mental state—his parent, his priest, his teacher, his little league coach. Section 2032 does not create a power broad enough to allow the court to order all these parties to submit to a battery of tests to determine the extent of their influence on a child's mental state merely on a psychiatrist's declaration that he needs them.

As originally enacted, rule 35 applied only to parties. When section 2032 was enacted "the authority of the court was codified and the scope of the examination enlarged." (*Harabedian* v. *Superior Court, supra,* 195 Cal.App.2d 26, 31.) Section 2032 was not limited to parties, but also included agents of a party, and persons in the custody or under the legal control of a party. Where rule 35 was amended in 1970, it expanded the classes of persons covered similarly except examination of a party's agent was still not authorized.[6]

---

[6] Rule 35 as amended reads:

"(a) *Order for examination.* When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"(b) *Report of examining physician.*

"(1) If requested by the party against whom an order is made under Rule 35(a) or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows that he is unable to obtain it. The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if a physician fails or refuses to make a report the court may exclude his testimony if offered at the trial.

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition.

"(3) This subdivision applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise. This subdivision does not preclude discovery of a report of an examining physician or the taking of a deposition of the physician in accordance with the provisions of any other rule."

"A statute which is clear and unambiguous does not admit of judicial interpretation or construction, and exceptions should not be read into it. [Citations.]" (*Harabedian* v. *Superior Court, supra,* 195 Cal.App.2d 26, 33.) The persons covered by the statute are clearly specified. We are bolstered in our reluctance to expand upon the clear language of the statute by a recent Supreme Court case interpreting this section. The Supreme Court held medical examinations may not be video-taped because the Legislature had not affirmatively authorized it in section 2032 (*Edmiston* v. *Superior Court,* 22 Cal.3d 699, 704 [150 Cal.Rptr. 276, 586 P.2d 590]). The court would not go beyond the definitions of a "written report" in section 2032 and section 17. If the Supreme Court would not expand the concept of "writing" to include the latest technological advances, it would be inappropriate for this court to expand the classes of persons who may be compelled to submit to intimate examinations.

Although an examination ordered properly under rule 35 (and subsequently adopted § 2032) does not violate the person's right of privacy or constitutional rights under the 4th, 5th and 13th Amendments to the United States Constitution (*Countee* v. *United States* (7th Cir. 1940) 112 F.2d 447, 451), an examination ordered outside the scope of section 2032, and unsupported by other authority, possibly would violate a person's constitutionally protected right of privacy. (But see, *People* v. *Privitera,* 23 Cal.3d 697 [153 Cal.Rptr. 431, 591 P.2d 919].) Our holding that section 2032 does not authorize the court to compel the mother to submit to the psychologist's testing, however, allows us to follow the rule of construction that interpretations are preferred which avoid serious constitutional difficulties (see *Associated Home Builders etc., Inc.* v. *City of Livermore,* 18 Cal.3d 582, 598 [135 Cal.Rptr. 41, 557 P.2d 473]).

Finally, we believe real party's argument that the mother's examination is "collateral" to the son's can be interpreted in only one other way that merits our consideration. This interpretation is the mother is a party whose mental condition is in controversy in her capacity as guardian ad litem of the son.

In an inverse situation to the one we have here, the court in *Beach* v. *Beach* (D.C. Cir.) 114 F.2d 479, held that a child was a "party" under rule 35 and could be ordered to submit to a blood test in a case in which the mother sued her husband for maintenance, alleging she was pregnant by him, and the husband denied paternity, charged the wife with adultery, and counter-claimed for divorce. The child was born pending suit, and was suing by her next friend, her mother. The court held the child was a

party "in substance" even if not in form. Such a person would be bound by the judgment because of his interests being protected by his representative (*Beach, supra,* at pp. 481-482).

This precise problem has been mooted by section 2032 and amendment to rule 35. The persons covered by the statute now include both parties and those who are "parties in substance" which in California also includes agents.

We do not believe this argument can be reversed, however, to include the mother as a party who has her mental state in controversy merely by being a guardian ad litem. A guardian ad litem would not necessarily be a parent of the minor. The legal incapacity of a minor which requires he have an adult representative to pursue his interests offers no justification for ordering such a guardian to submit to the invasion of his body or intimate mental processes.

This basic problem was addressed by the Ninth Circuit Court of Appeals in *Fong Sik Leung* v. *Dulles* (9th Cir. 1955) 226 F.2d 74. A suit was brought by a minor to establish he was an American citizen alleging he was born to an American father in China. The suit was brought by his guardian ad litem who was also the minor's alleged father. The district court dismissed the action when the guardian refused to submit to a blood test ordered under rule 35. The appellate court disagreed with the district court's action holding "[t]he fact that a guardian is subject to certain controls of the court no more makes him a party subject to the blood test than it does a party litigant's attorney, whose blood condition may be a relevant fact in the case." (At p. 76.)

The opinion noted that federal courts have no inherent power to order such examinations without the authority of a statute, or a state law in a diversity case. This is not true in California as noted above. The conclusion that no authority exists to compel guardians to submit to examination is still valid, however, since the inherent power of the court has never been recognized to extend that far (see also *Dulles* v. *Quan Yoke Fong* (9th Cir. 1956) 237 F.2d 496).

In a separate concurring opinion in *Fong Sik Leung,* the judge suggests the court has power to control officers of the court, and if a guardian ad litem refuses to submit to an order requiring a blood test, he should be replaced in his capacity as guardian ad litem (at p. 79, Boldt conc.). We do not rule on the propriety of such a procedure as it is not raised in

support of the court's order, but we do not see how it would aid either party in this case. The blood test still could not be compelled if the mother refused to submit to it.

We are aware that the California discovery rules were "not copied verbatim" from the federal rules and "[t]he importance of those alterations is that almost without exception they were made *for the express purpose of creating in California a system of discovery procedures less restrictive than those then employed in the federal courts.*" [fn. omitted, italics in original.] (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 375.) But the scope of the expansion of section 2032 appears clear from the additional language used. We have found no authority that would expand the meaning of the statute to cover the mother in this case.

Let a writ of mandate issue compelling the respondent superior court to modify its order dated October 4, 1978, in case No. 361549, by deleting the requirement that Frances Olga Reuter submit to a battery of psychological testing. The temporary stay is vacated.

Brown (Gerald), P. J., and Staniforth, J., concurred.