CAROL T. THYNNE, APPELLEE, V. CITY OF OMAHA, APPELLANT.

351 N.W.2d 54

Filed June 22, 1984. No. 83-332.

Herbert M. Fitle, Omaha City Attorney, James E. Fellows, and Thomas O. Mumgaard, for appellant.

Leo A. Knowles and John F. Thomas of McGrath, North, O'Malley & Kratz, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

As the result of an automobile accident, appellee, Carol T. Thynne, brought suit against the appellant,

City of Omaha, under the Nebraska Political Subdivisions Tort Claims Act. The city appeals from the $351,385.94 judgment entered against it. We reverse and remand for a new trial solely on the issue of damages.

On Friday evening, January 9, 1981, as Thynne was returning home from work at Bergan Mercy Hospital in Omaha, where she was employed as a nurse anesthetist, the vehicle Thynne was driving was struck from the rear by an Omaha police cruiser. While there are minor discrepancies in their recapitulations of the accident, both Thynne and the police officer agree that Thynne was stopped in the inside westbound lane of Pacific Street because cars in front of her had stopped awaiting an opportunity to turn left onto 97th Street. The police officer attributed the cause of the accident to his following too closely and not being able to stop once he noticed Thynne's vehicle.

When Thynne finally reached her home, after the accident was investigated and it was determined that she could drive her vehicle, she was feeling nauseous and was still suffering from a headache that set upon her shortly after the accident. Upon awaking Saturday morning Thynne still had the headache, and, in addition, her neck, face, and right arm were sore. She made an appointment to see her family physician on Monday.

On Monday Thynne went to work and was informed by the physician in charge to return home and see her family physician before returning to work. Thynne saw her physician that day, and he recommended that she apply heat and take aspirin. He also prescribed pain-relieving drugs, along with instructions that she not return to work. By the next weekend Thynne's pain had increased. She suffered spells of dizziness, diminished hearing, and pain in her jaws. She again called her family physician, but he was unavailable. Thynne's husband then called the family dentist, who made a house call.

The dentist diagnosed Thynne's problem as a temporomandibular joint dysfunction, which involves the main joints of the jaw, and fitted her with a mouthpiece designed to relieve tension on the temporomandibular joint.

On March 5, 1981, Thynne attempted to return to work and was required by her employer to see an orthopedic physician. The orthopedist diagnosed an acute cervical sprain. He advised her to rest, apply heat, and take medication for pain.

Thynne's pain lingered on through the year, and in January of 1982 Thynne's orthopedist sent her to a neurologist, who placed her in the hospital, where tests were conducted and physical therapy was prescribed. In the summer of 1982 Thynne traveled to California, on the advice of her family dentist, to be treated by a specialist in temporomandibular joint dysfunction. The specialist's treatment consisted of, among other things, the use of herbs and acupuncture.

Thynne has not returned to work and continues to complain of pain in her neck and jaws, along with numbness in her right hand. Several physicians who have examined Thynne find no X-ray or other "objective" physical evidence of the cause for her continuing pain. They also opine that Thynne's pain may be the result of a functional overlay, that is to say, the etiology of the pain is emotional rather than physiological. No physician has doubted the existence of Thynne's pain; one physician thought that it would be easier to treat her once the stress of litigation was gone. While several physicians who have examined Thynne expressed the opinion that she should return to work on at least a part-time basis, neither Thynne's family physician nor her orthopedist has recommended that she do so.

On March 9, 1983, 5 days prior to the March 14, 1983, scheduled trial date, the city filed a motion to compel an examination of Thynne on March 11, 1983, by a clinical psychologist. In connection with the

timing of this motion, we note that the parties stipulated on or about September 24, 1982, that all discovery was to be completed on or before December 1, 1982. However, neither party abided by this stipulation. On February 8, 1983, Thynne scheduled the deposition of a medical expert to be taken in Los Angeles, California, on March 8, 1983; on February 18, 1983, Thynne filed supplemental answers to interrogatories which, among other things, added the name of a registered physical therapist as an additional "medical practitioner" who examined or treated her; on February 23, 1983, Thynne scheduled the taking of her orthopedist's deposition on March 3, 1983; and on March 1, 1983, Thynne again supplemented her answers to interrogatories by the addition of another physician as one who had examined or treated her, and listed other witnesses. The city's March 9 motion was denied on March 10, 1983, by a judge other than the one presiding at the trial.

The city assigns six errors to the trial court, none of which is directed to the issue of liability. Since we hold that the failure to grant the city's motion for examination requires a reversal and vacation of the judgment, a discussion of the issues raised by the city's other assignments, which relate to the amount of the judgment, is unnecessary.

Pursuant to Neb. Rev. Stat. § 25-1273.01 (Cum. Supp. 1982), this court adopted the Nebraska Discovery Rules, which govern the conduct of discovery in civil cases. Neb. Ct. R. 35(a) (Rev. 1983) provides:

Order for Examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his or her custody or legal control. The order may be made only on motion for good cause shown and upon notice to

the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The city's motion was accompanied by the affidavit of the city's attorney, which stated that Thynne's attorneys had refused to permit the requested examination. It also stated that since the deposition testimony of several of the expert witnesses indicated that there was no evidence of a physiological cause of Thynne's pain, and the pain might be due to emotional factors, such an examination was necessary to determine the nature and extent of Thynne's injuries.

Our review of the denial of the city's motion begins with the observation that the granting or denying of a motion to compel a physical or mental examination of a party is grounded in the sound discretion of the trial court. Absent an abuse of that discretion, the trial court's ruling must stand. *Hoegerl v. Burt*, 215 Neb. 752, 340 N.W.2d 428 (1983); *Moninger v. Moninger*, 202 Neb. 494, 276 N.W.2d 100 (1979).

There is no argument that Thynne's mental condition was in controversy. Several physicians, including some of those personally retained by Thynne, could not point to an objective physiological cause of Thynne's continuing pain. Some of these physicians thought there might be an emotional or psychological component to Thynne's pain. Thynne argues that because of the timing of the city's motion, it should not have been granted. Thynne does not argue that her case would have been unduly prejudiced by her submission to the psychological examination 3 days before trial. Nor does she argue that the examination would have presented undue inconvenience. We think the trier of fact, the trial judge in this case, might well have been aided in his evaluation of Thynne's future pain and prospects for recovery by such an examination conducted at a

point close in time to the trial. We have previously held that such an examination may, in the sound discretion of the trial judge, even be ordered during trial. *Hoegerl v. Burt, supra*; *Ziskovsky v. Miller*, 120 Neb. 255, 231 N.W. 809 (1930); *O'Brien v. Sullivan*, 107 Neb. 512, 186 N.W. 532 (1922). See, also, Annot., 9 A.L.R.3d 1146 (1966).

Accordingly, we conclude that Thynne's mental condition was in controversy, good cause for her psychological evaluation was shown, and the order was not sought at a time when Thynne's case would have been unfairly prejudiced or the start of the trial delayed.

Discovery rule 35 provides that a court-ordered physical or mental examination must be conducted by a "physician." The question becomes whether the term physician includes a licensed clinical psychologist, a matter in which the judge overruling the motion had no prior guidance from this court. Thynne argues that a clinical psychologist does not fit into the definition of physician offered by Neb. Rev. Stat. §§ 71-1,102 et seq. (Reissue 1981), which deal with licensing. While we do not find a definition of the term physician in any of those statutes, § 71-1,102 provides that persons who publicly profess to be physicians are deemed to be engaged in the practice of medicine. Even if it be assumed from a reading of those statutes that the term physician, as used therein, means only someone who practices medicine or surgery, a question we do not decide, we believe that the statutes constituting the Nebraska Evidence Rules, Neb. Rev. Stat. §§ 27-101 et seq. (Reissue 1979), provide better guidance.

Section 27-504(1)(b) defines physician, for the purpose of determining when a physician-patient privilege obtains, as including a practicing clinical psychologist who is licensed or certified as such. It seems to us that if the services rendered by a psychologist are of a nature as to give rise to a physician-patient privilege, it follows that a party in

a lawsuit which presents a controversy as to a condition which psychologists investigate or treat ought to be able to employ the services of such practitioners.

Our review of the case law in this relatively untilled legal field discovers only one jurisdiction which has reported cases of any relevance. In *Reuter v. Superior Ct., Cty. of San Diego*, 93 Cal. App. 3d 332, 155 Cal. Rptr. 525 (1979), the question was whether a trial court abused its discretion by ordering that a mother and son, seeking recovery for the wrongful death of their husband and father, submit to psychological tests to be administered by a psychologist. The California court held that a psychologist was not a physician. It reached that conclusion because the order was based upon a statutory discovery provision which provided that such examinations be conducted by physicians and that elsewhere the California statutes define physician as " 'any person holding a valid and unrevoked physician's and surgeon's certificate or certificate to practice medicine and surgery, issued by the Board of Medical Examiners . . . .' " *Id.* at 338, 155 Cal. Rptr. at 529. The reviewing court found the trial court's order proper because that psychological evaluation was to be conducted by a psychologist who was working under the general direction of a psychiatrist. On the other hand, *Browne v. Super. Court for Cty. of Santa Clara*, 98 Cal. App. 3d 610, 159 Cal. Rptr. 669 (1979), held that an order requiring a party to submit to the physical examination of a rehabilitation expert was improperly granted because the expert was not a physician. Since these California cases are based upon a statutory scheme which contains a definition of the term physician, we do not find them persuasive.

Counsel for the city has called our attention to the unreported memorandum and order in *Massey v. Manitowoc Co.*, CV82-2970 (E.D. Pa. Dec. 6, 1983) (order granting examination), which concluded that a licensed psychologist can be treated as a physician

for the purpose of conducting an examination under Fed. R. Civ. P. 35, the parent of our rule 35. In part that court reasoned:

> It is perfectly reasonable to allow qualified psychologists to administer psychological tests once it has been determined psychological testing is appropriate in a particular case. The argument is not mere bootstrapping. Considering their required specialized training and experience, psychologists will in some instances be best qualified to administer examinations that require psychological testing. That is what they have been trained to do. To require that only a medical doctor, who may or may not have received specialized training in psychiatry or psychology, be permitted to administer the tests because Rule 35 permits utilizing only a "physician," would not serve the ends of justice.

The paucity of precedent leaves us free to write upon a clean slate in regard to this issue. Webster's New Collegiate Dictionary (1974) defines the word physician as "a person skilled in the art of healing." Neb. Rev. Stat. § 71-3832 (Reissue 1981) defines clinical psychology as "that branch of psychology concerned with the assessment, diagnosis, and treatment of mental, emotional, and behavioral disorders." In order to practice as a clinical psychologist, one must either hold a doctoral degree in clinical psychology and have at least 1 year of postdoctoral clinical experience or pass an examination. Neb. Rev. Stat. § 71-3835 (Reissue 1981).

The use of the testimony of clinical psychologists has become commonplace in cases involving the best interests of children, and we find it helpful when we exercise our powers as "parens patriae" of minors, incompetents, and other legally disabled persons.

In short, we believe that clinical psychologists, although they, just as medically trained physicians, are not always successful in their treatment efforts,

are skilled at and engage in the art of healing. We therefore now inscribe on our heretofore clean slate that clinical psychologists are physicians within rule 35 of the Nebraska Discovery Rules. The fact that the examination sought was to be conducted by a licensed clinical psychologist afforded the trial court no ground to deny the city's motion.

Nor do we find any merit in Thynne's suggestion that the city, having already had her examined by an orthopedist, could not require a second examination. It desired an examination by an expert trained in a discipline not within its first expert's area of expertise on a matter in issue and was entitled to pursue that line of inquiry.

Our review of the record leads us to conclude that the denial of the city's motion for an order compelling Thynne to be examined prejudiced the city's presentation of its case and was an abuse of discretion.

REVERSED AND REMANDED FOR A NEW TRIAL
ON THE ISSUE OF DAMAGES.