Filed 11/19/15; pub. order 12/18/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JONNIE ROE, a Minor, etc., et al., | H042060 |
| | (San Benito County |
| Petitioners, | Super. Ct. No. CU-14-00017) |
| | |
| v. | |
| | |
| SUPERIOR COURT OF SAN BENITO COUNTY, | |
| | |
| Respondent; | |
| | |
| HOLLISTER SCHOOL DISTRICT et al., | |
| | |
| Real Parties in Interest. | |

Petitioners Jonnie Roe, a minor, (Jonnie), Jane Roe (Jane), and John Roe (John) assert, among other claims, that the superior court had no authority to order interviews of Jane and John, Jonnie's parents, collateral to the mental examination of Jonnie and, in issuing such an order, the court exceeded its authority under Code of Civil Procedure section 2032.020.[1]  As explained below, we agree.

I

*Background*

Real parties in interest (defendants) are the named defendants in the underlying civil action for damages (CU-14-00017) brought by Jonnie (by and through his guardian

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

ad litem, John) and Jane. The complaint alleges that Jonnie, while a kindergartner at an elementary school in the Hollister School District, was sexually molested at school by another male kindergartener on two occasions.[2] The named defendants are Hollister School District (School District) and Bill Sauchau, who is alleged to be the elementary school's principal; Kathy Hudson, who is alleged to be a teacher at the school; and a person with the surname of Zamora (first name unknown), who is alleged to be, "a playground monitor and/or yard supervisor" at the school.

School District brought a motion in respondent San Benito County Superior Court (superior court) for an order compelling Jonnie to submit to an independent mental examination, which would include personal interviews of Jonnie and his parents by Dr. Anlee Kuo, a psychiatrist, and psychological testing of Jonnie by Dr. Sarah Hall, a psychologist. The superior court granted the motion on March 2, 2015.

Petitioners sought a writ of mandate "compelling the respondent court to vacate its order of March 2, 2015 insofar as it compels John and Jane Roe to submit to interviews by the defense forensic psychiatrist, refuses to permit John, as guardian, to attend Jonnie's interview, and refuses to order defendants to deliver the written tests administered to Jonnie and their results and to enter a new order without requiring such interviews and requiring defendants to deliver the tests and the results . . . ."

On March 12, 2015, we issued a limited order staying the superior court's March 2, 2015 order only insofar as it compels the interview of Jonnie's parents, until further order of this court. We subsequently ordered the respondent superior court "to

---

[2] The first cause of action for negligence, the second cause of action for negligence per se-failure to report known and/or suspected child abuse, and the third cause of action for negligent supervision were asserted by only Jonnie (by and through his guardian ad litem); the fourth cause of action for intentional infliction of emotional distress and the fifth cause of action for negligent infliction of emotional distress were asserted by both Jonnie (by and through his guardian ad litem) and his mother, Jane; and the sixth cause of action for concealment was asserted by only Jane.

show cause . . . why a peremptory writ should not issue as requested in the petition for writ of mandate."

## II

### *Discussion*

A. *Parental Interviews Collateral to Mental Examination of Minor*

1. *Facts*

The superior court's March 2, 2015 order sets forth the scope and length of the mental examination of Jonnie by Drs. Kuo and Hall. The order authorizes Dr. Hall to administer four specific psychological tests to Jonnie. It prohibits third-party observers during those examinations but requires the examinations to be audiotaped.

The March 2, 2015 order further compels Jonnie's parents to submit to "collateral interviews" as part of the mental examination of their son. The order limits the scope of those interviews to parental "observations about the mental physical symptoms that Jonnie Roe has expressly put into controversy . . . ." It also places the following limitations on those interviews: "Any questioning must be directly relevant, and a nexus must exist to the information sought and the claimed symptoms so as to protect Jonnie Roe's, Jane Roe's, and John Roe's privacy. Dr. Kuo may not inquire about Jane Roe's or John Roe's mental state. [¶] Dr. Kuo's interview shall not be unnecessarily repetitive of questions asked in deposition proceedings and other written discovery to date."

2. *Section 2032.020*

Section 2032.020, subdivision (a), sets forth the three categories of persons subject to mental examinations: "Any party may obtain discovery, subject to the restrictions set forth in Chapter 5 (commencing with Section 2019.010), by means of a physical or mental examination of (1) a party to the action, (2) an agent of any party, or (3) a natural person in the custody or under the legal control of a party, in any action in which the mental or physical condition (including the blood group) of that party or other person is in controversy in the action." There is no dispute that Jonnie's mental state is in

3

controversy. (See *Vinson v. Superior Court* (1987) 43 Cal.3d 833, 839 ["a party who chooses to allege that he has mental and emotional difficulties can hardly deny his mental state is in controversy"].) The mental examination must be "performed only by a licensed physician, or by a licensed clinical psychologist who holds a doctoral degree in psychology and has had at least five years of postgraduate experience in the diagnosis of emotional and mental disorders." (§ 2032.020, subd. (c).)

Defendants argue that a collateral interview of a minor's parents is permissible as part of an independent mental examination of the minor and is required by the professional standard of care in psychiatry. They suggest that, since the examiner must be a licensed physician or psychologist, the California Legislature "must expect a minimum level of competence from the physician or psychologist and similarly must require the physician or psychologist to practice within the standard of care applicable to their [*sic*] licensure or specialty." They assert that "[a] collateral interview is therefore at least implicitly authorized by the Code of Civil Procedure."

This case presents a straightforward question of statutory interpretation. " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language. [Citation.]" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)

"A statutory provision is ambiguous if it is susceptible of two reasonable interpretations. (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519.)" (*People v. Dieck* (2009) 46 Cal.4th 934, 940.) "[I]f the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we

4

may also consider the consequences of a particular interpretation, including its impact on public policy. [Citations.]" (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.) "Only when the language of a statute is susceptible [of] more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning. [Citation.]" (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055.) "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. [Citations.]" (*People v. Overstreet* (1986) 42 Cal.3d 891, 895.)

" '[A]n intention to legislate by implication is not to be presumed.' [Citations.]" (*In re Christian S.* (1994) 7 Cal.4th 768, 776.) "A court may not, 'under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.)" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.) " 'Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citation.]" (*In re Jennings* (2004) 34 Cal.4th 254, 265.)

"[W]e are mindful of this court's limited role in the process of interpreting enactments from the political branches of our state government. In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, ' " 'whatever may be thought of the wisdom, expediency, or policy of the act.' " ' [Citation.] '[A]s [the Supreme Court] has often recognized, the judicial role in a democratic society is fundamentally to interpret laws, not to write them. The latter power belongs primarily to the people and the political branches of government . . . .' (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 675 (conc. opn. by Werdegar, J.).) It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature. 'This court has no power to rewrite the statute so as to make it conform to a

5

presumed intention which is not expressed.' [Citations.]" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633.)

Section 2032.020 establishes only three categories of persons subject to mental examination. "The three statutory categories of persons who may be examined are exclusive because, after the adoption of the 1957 statutes dealing with civil discovery, our courts lack the power to order discovery beyond that permitted by the statutes. [Citations.]" (*Cruz v. Superior Court* (2004) 121 Cal.App.4th 646, 650 (*Cruz*) [former § 2032, subd. (a) (now § 2032.020, subd. (a))]; see *Reuter v. Superior Court* (1979) 93 Cal.App.3d 332, 343 (*Reuter*) [stating with respect to former § 2032, "[t]he persons covered by the statute are clearly specified"].)

While Jane is a plaintiff in the underlying action, the motion sought to compel a mental examination of only Jonnie. Jane was not a "party" for purposes of that motion. John is not a "party" for the purposes of that motion either; he is not even a "party" to the underlying action. The "guardian ad litem is not a party to the action; instead, he or she is a representative of record of a party who lacks capacity to sue. (*J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 964.)" (*Safai v. Safai* (2008) 164 Cal.App.4th 233, 245; see § 372.) There is no argument that either parent is an agent of Jonnie or in the custody or under the legal control of Jonnie within the meaning of section 2030.020, subdivision (a).

Nothing in section 2032.020 contemplates a "collateral interview" of a minor's parents as part of a mental examination of a party who is a minor. In *Reuter*, a mother and her son were plaintiffs in a lawsuit that arose "from an automobile accident in which the son was injured and his father killed." (*Reuter*, *supra*, 93 Cal.App.3d at pp. 334-335.) The appellate court held that former section 2032 did not authorize psychological testing of plaintiff mother collateral to the psychiatric examination of her son where mother's mental condition was not in controversy even though the psychiatrist stated that testing of the mother was necessary to complete his examination of the son. (*Reuter*, *supra*, at pp. 340-345.) The court stated: "[M]any different parties may be the main influence in

6

any particular persons' [*sic*] mental state—his parent, his priest, his teacher, his [L]ittle [L]eague coach. [Former] Section 2032 does not create a power broad enough to allow the court to order all these parties to submit to a battery of tests to determine the extent of their influence on a child's mental state merely on a psychiatrist's declaration that he needs them." (*Id*. at p. 342.)

While interviewing the parents of a child to gain background and information about that child may be a sound professional practice from a psychiatrist's viewpoint, section 2030.020's plain language does not empower a trial court to make a discovery order requiring such parental interview as part of a mental examination of a party who is a minor.[3] Such authority must come from the Legislature.

B. *Mental Examination of Jonnie Ordered for March 16, 2015*

The plaintiffs in the underlying action requested that John, as Jonnie's guardian ad litem, be permitted to observe Dr. Kuo's interview of Jonnie. The March 2, 2015 order set Dr. Kuo's mental examination of Jonnie for March 16, 2015 (unless the parties agreed to an alternative date) and, as indicated, it prohibited third-party observers during the examination. Petitioners have informed this court that this examination has been completed and any issue concerning the presence of an observer or attorney during that examination is moot. We agree that issue has been rendered moot since there is no effectual relief that may be granted, and we do not address it. (See *Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 862-863.)

---

[3] Our conclusion renders moot the questions (1) whether collateral interviews of Jane and John, as an adjunct to the mental examination of Jonnie, would violate their constitutional rights to privacy or their rights to confidential marital communications and (2) whether the order's language setting forth the scope of the collateral parental interviews is impermissibly vague.

7

C. *Written Testing Materials and Jonnie's Answers*

Section 2032.610, subdivision (a), provides in pertinent part: "If a party submits to . . . a physical or mental examination in compliance with . . . an order of court under Article 3 (commencing with Section 2032.310) . . . , that party has the option of making a written demand that the party at whose instance the examination was made deliver . . . the following to the demanding party: [¶] (1) A copy of a detailed written report setting out the history, examinations, findings, including the results of all tests made, diagnoses, prognoses, and conclusions of the examiner." If the party submitting to an examination exercises the option of making such a demand, a copy of the requested reports must "be delivered within 30 days after service of the demand, or within 15 days of trial, whichever is earlier." (§ 2032.610, subd. (b).)

In their opposition to the motion to compel the mental examination of Jonnie, plaintiffs requested an order compelling defendants to produce all reports required by section 2032.610. They additionally stated that they should be provided with copies of the written test questions and Jonnie's responses.

In its reply to that opposition, School District responded that Dr. Hall objected to production of testing materials because they were subject to copyright law, and it sought a protective order in the event the superior court ordered disclosure of those materials. It agreed to provide a written report pursuant to section 2032.610, subdivision (a).

During the hearings on the motion, the superior court told the parties: "I'm going to order that [Dr. Hall] comply with the Code of Civil Procedure [section 2032.610]. I'm not going to start defining the elements. We'll wait and see how she complies, and if you believe she has failed to comply, then you can deal with that with a motion to compel." It agreed that the phrase "the results of all tests" did not mean the written testing materials but rather the findings made. The superior court indicated that it would order compliance in the statutory language of section 2032.610.

As part of the March 2, 2015 order, the superior court ordered both examiners to provide plaintiffs with the reports statutorily required by section 2032.610. Without specifying any legal basis, the superior court specified that plaintiffs were not entitled to the written testing materials used by Dr. Hall and Jonnie's answers thereto without further order of the court.

Petitioners seek a writ of mandate compelling defendants in the underlying case to deliver the written tests administered to Jonnie and the test results, impliedly including Jonnie's test answers.

Petitioners argue that copyright law is not a valid reason for the court to refuse to compel the examiner to deliver the tests and test results. The petition does not, however, allege that the superior court's refusal was based on copyright law and support that allegation by citation to the record. (See Cal. Rules of Court, rules 8.204(a)(1)(C), 8.485(a), and 8.486(b).) The superior court's ultimate order did not contain any mention of copyright law. We will not issue an advisory opinion on an abstract question of law.

In their argument, petitioners imply that section 2032.610, subdivision (a)(1), requires the production of the written testing materials and Jonnie's answers by analogy to Penal Code section 1054.3, subdivision (a)(1), a criminal discovery provision that specifies the disclosure that the defense must make to the prosecution regarding witnesses whom the defense intends to call at trial.[4] They offer a brief quote from *People v. Hajek and Vo* (2014) 58 Cal.4th 1144 (*Hajek*), which considered Penal Code section 1054.3, subdivision (a)(1): "This provision includes the raw results of standardized

---

[4] Penal Code section 1054.3, subdivision (a), provides in pertinent part: "The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (1) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial."

9

psychological and intelligence tests administered by a defense expert upon which the expert intends to rely. (*Woods v. Superior Court* (1994) 25 Cal.App.4th 178, 184-185.)" (*Hajek*, *supra*, at p. 1233.) Without providing any legislative history relevant to statutory interpretation, petitioners argue that the phrase "the results of all tests made" (§ 2032.610, subd. (a)(1)) and the phrase "the results of physical or mental examinations" (Pen. Code, § 1054.3) both encompass raw test data. They attempt to invoke the principle that courts presume that the Legislature intended similar statutory language covering similar subjects to be similarly construed.

We first observe that "maxims of statutory construction are not immutable principles that dictate how a statute is to be interpreted. (See *In re Joseph B*. (1983) 34 Cal.3d 952, 957.)" (*Bisno v. Kahn* (2014) 225 Cal.App.4th 1087, 1104.) Second, it is a principle of statutory construction that "[w]here . . . legislation has been judicially construed and a subsequent statute on the same or an analogous subject uses identical or substantially similar language, we may presume that the Legislature intended the same construction, unless a contrary intent clearly appears. [Citations.]" (*Estate of Griswold* (2001) 25 Cal.4th 904, 915-916.) This principle does not support petitioners' argument.

The first sentence of former section 2032, subdivision (h), which was substantively continued in section 2032.610, subdivision (a),[5] predates the 1994 judicial construction of Penal Code section 1054.3, subdivision (a)(1), in *Woods v. Superior Court*, *supra*, 25 Cal.App.4th at pp. 184-185 (*Woods*), which was cited by *Hajak*. The Legislature could not have been aware of *Woods'* construction when it earlier enacted or amended former section 2032. (See fn. 5, *ante*.) Furthermore, Penal Code section 1054.3, subdivision (a)(1), concerns "the results of physical or mental

---

[5] "Subdivision (a) of Section 2032.610 continues the first sentence of former Section 2032(h) without substantive change." (Cal. Law Revision Com. com., 21A West's Ann. Code of Civ. Proc. (2007 ed.) foll. § 2032.610, p. 436; see e.g. Stats.1993, ch. 219, § 71, p. 1591; Stats. 1986, ch. 1336, § 1, p. 4751.)

examinations . . . which the defendant *intends to offer in evidence at the trial*." (Italics added.) In this respect, section 2032.610, subdivision (a), and Penal Code section 1054.3, subdivision (a)(1), appear dissimilar. (Cf. *Woods*, *supra*, at pp. 184-185 ["Requiring pretrial disclosure of the raw results of standardized psychological and intelligence tests administered and relied upon by an expert the defense intends to call at trial allows access to information necessary to prepare the case, reduces the chance of surprise at trial, furthers the attainment of truth and lessens the risk of a judgment based on incomplete testimony"].) Petitioners have not shown that the Legislature's intent and purpose with regard to section 2032.610, subdivision (a), support their argument.

Petitioners also assert that section 2032.610's phrase "results of all tests made" constitutes "plain language" that requires Jonnie's answers to be provided to him, but they offer absolutely no support for that assertion.[6]

Petitioners' undeveloped analyses fail to establish that section 2032.610 requires defendants to deliver the written testing materials and Jonnie's raw answers to the plaintiffs. Consequently, they have not demonstrated in this writ proceeding that the superior court was under a legal duty to order, or that its discretion could be legally exercised only by ordering, such delivery. (See § 1085 ["A writ of mandate may be issued by any court to any inferior tribunal . . . to compel the performance of an act which the law specially enjoins . . . ."]; *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851 [A writ of mandate will lie where, under the facts, discretion can be exercised in only one way].)

---

[6] "When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word. [Citations.]" (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122.) The word "result" generally refers to the consequence or outcome of something. (See <http://www.oxforddictionaries.com/us/definition/american_english/result>[as of Nov. 19, 2015]; Webster's New World College Dictionary (4th ed. 2008) p. 1223.) The plain language of the statute does not resolve whether test "results" encompasses the examinee's raw responses.

11

Moreover, petitioners have not demonstrated there is no "plain, speedy, and adequate remedy, in the ordinary course of the law" available to them (§ 1086). Petitioners bear the burden of showing that they lack such a remedy. (*Phelan v. Superior Court in of San Francisco* (1950) 35 Cal.2d 363, 366.) The March 2, 2015 order suggests that plaintiffs may request a further order of the court as to the written testing materials used by Dr. Hall and Jonnie's answers thereto. If plaintiffs did not receive reports satisfying section 2032.610, subdivision (a), pursuant to the court's March 2, 2015 order, there is a statutory right to bring a motion for an order compelling delivery of reports demanded under Section 2032.610.[7] (§ 2032.620, subd. (a) ["If the party at whose instance an examination was made fails to make a timely delivery of the reports demanded under Section 2032.610, the demanding party may move for an order compelling their delivery"].) Finally, there is a right of appeal from a final judgment.

No writ relief is warranted concerning the written testing materials used by Dr. Hall and Jonnie's answers thereto.

DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent court to vacate its March 2, 2015 order insofar as it authorizes collateral interviews of Jane Roe and John Roe as part of the mental examination of Jonnie Roe. The stay order issued March 12, 2015 is vacated. Petitioners are entitled to recover costs incurred in this writ proceeding.

---

[7] In addition, if defendants designate Dr. Hall as an expert witness, other statutory rights of discovery may apply. (See e.g. §§ 2025.480, 2034.210 et seq., 2034.410.)

_____

ELIA, J.


WE CONCUR:




_____

RUSHING, P. J.




_____

WALSH, J.[*]




*Roe, a Minor, etc. et al. v. Superior Court*
H042060

---

[*]Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JONNIE ROE, a Minor, etc., et al.,<br><br>    Petitioners,<br><br>    v.<br><br>SUPERIOR COURT OF SAN BENITO COUNTY,<br><br>    Respondent;<br><br>HOLLISTER SCHOOL DISTRICT et al.,<br><br>    Real Parties in Interest. | H042060<br>(San Benito County<br>Super. Ct. No. CU-14-00017)<br><br>**ORDER GRANTING REQUEST FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matter filed on November 19, 2015, was not certified for publication in the Official Reports. Counsel for real parties in interest has requested the opinion be certified for publication. Counsel for petitioner and for California Attorneys of California have requested the opinion be certified for partial publication. It appears that the opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The court will grant full publication. The opinion is ordered published in the Official Reports.

_____
ELIA, J.

_____
RUSHING, P.J.

| | |
|---|---|
| Trial Court: | San Benito County Superior Court |
| | Superior Court No.: CU-14-00017 |
| | |
| Trial Judge: | Honorable Harry J. Tobias |
| | |
| Counsel for Petitioners: | Alan Charles Dell'Ario |
| JONNIE ROE, a Minor, etc., et al. | |
| | Alexis Susann McKenna |
| | Winer, McKenna & Burritt |
| | |
| Counsel for Real Parties in Interest: | Eric Shiu |
| HOLLISTER SCHOOL DISTRICT et al., | Lynch and Shupe |

*Roe, a Minor, etc. et al. v. Superior Court*
H042060