[S.F. No. 24932. Aug. 27, 1987.]

KATHERINE VINSON, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
PERALTA COMMUNITY COLLEGE DISTRICT et al., Real
Parties in Interest.

834

**COUNSEL**

Joan Messing Graff, Robert Barnes, Chris Redburn and Patricia A. Shiu for Petitioner.

Joseph Posner, Judith E. Kurtz, Nancy L. Davis, Beth H. Parker, Alana L. Bowman, Lorraine L. Loder, Susan E. Nash, Peggy Ruffra, Alan L. Schlosser, Margaret C. Crosby, Edward M. Chen, John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Marian M. Johnston and Louis Verdugo, Jr., as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Eugene Brown, Jr., Christina H. Jones and Hardin, Cook, Loper, Engel & Bergez for Real Parties in Interest.

Kurt W. Melchior, A. Megan Evans and Severson, Werson, Berke & Melchior as Amici Curiae.

## OPINION

**MOSK, J.**—The plaintiff in a suit for sexual harassment and intentional infliction of severe emotional distress petitions for a writ of mandate and/or prohibition to direct respondent court to forbid her pending psychiatric examination, or in the alternative to protect her from any inquiry into her sexual history, habits, or practices. She also requests that her attorney be allowed to attend the examination if it is held. We conclude that the examination should be permitted but that a writ should issue to restrict its scope. We further conclude that her counsel should not be present.

Plaintiff is a 59-year-old widow who in 1979 applied for a job in Oakland with a federally funded program, administered at the time by defendant Peralta Community College District, under the direction of codefendant Grant. Plaintiff alleges that Grant, during an interview with her in a private cubicle, commented on how attractive she appeared for a woman of her age. He assertedly made some salacious observations regarding her anatomy and expressed his desires with regard thereto. He allegedly concluded the interview by intimating that acquiring the position was subject to a condition precedent: her acquiescence to his sexual yearnings. Plaintiff claims she declined his advances as unconscionable and left greatly distraught.

Unknown to Grant, plaintiff was later hired by defendant college district as a certification technician. She asserts that once he discovered she was working for the program, he had her transferred to the payroll unit, a position for which he apparently knew she had no training. Soon thereafter he terminated her employment.

Plaintiff filed suit on several causes of action, among them sexual harassment, wrongful discharge, and intentional infliction of emotional distress. Defendants' actions are said to have caused her to suffer continuing emotional distress, loss of sleep, anxiety, mental anguish, humiliation, reduced self-esteem, and other consequences.

Defendants moved for an order compelling her to undergo a medical and a psychological examination.[1] The examinations were meant to test the true extent of her injuries and to measure her ability to function in the workplace. Plaintiff opposed the motion as a violation of her right to privacy. In the alternative, if the court were to permit the examination she requested a protective order shielding her from any probing into her sexual history or practices, and asked that her attorney be allowed to attend in order to assure compliance with the order. The court granted the motion without imposing any of these limitations. Plaintiff petitioned the Court of Appeal for a writ of prohibition and/or mandate to direct the trial court to forbid the examination or to issue appropriate protective orders. The Court of Appeal denied the petition.

We use prerogative writs in discovery matters only to review questions that are of general importance to the trial courts and the profession, and when broad principles can be enunciated to guide the courts in future cases. (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 169 [84 Cal.Rptr. 718, 465 P.2d 854].) As we shall see, intervening legislative enactments have partially resolved some of the issues raised by this petition. Nonetheless, important questions remain regarding the right of a defendant in a case alleging sexual harassment and emotional distress to conduct discovery and a plaintiff's countervailing right to privacy.

## I. *The Appropriateness of a Mental Examination*

Plaintiff first contends the psychiatric examination should not be permitted because it infringes on her right to privacy. Before we can entertain this constitutional question, we must determine the statutory scope of the discovery laws.[2]

---

[1] We use the terms "psychiatric," "psychological" and "mental" examination interchangeably for the purposes of this issue.

[2] Part 4, title 3, chapter 3, article 3, of the Code of Civil Procedure (§§ 2016-2036.5), the applicable legislation on depositions and discovery at the time this action began, has been repealed. (Stats. 1986, ch. 1334, § 1.) The repeal was operative July 1, 1987, on which date a new article 3 (entitled the Civil Discovery Act of 1986) came into effect. The act provides, however, that the use of a discovery method initiated before July 1, 1987, will be governed by the law regulating that method at the time it was initiated. (Stats. 1987, ch. 86, § 20.) We must therefore apply the superseded discovery procedures to this case. But as we shall show by appropriate references to the new act, many of its relevant provisions are substantially similar.

Code of Civil Procedure section 2032, subdivision (a),[3] permits the mental examination of a party in any action in which the mental condition of that party is in controversy. Plaintiff disputes that her mental condition is in controversy. She points to *Cody* v. *Marriott Corp.* (D.Mass. 1984) 103 F.R.D. 421, 422, a case interpreting rule 35(a) of the Federal Rules of Civil Procedure. Like the California rule that was patterned on it, rule 35 requires that physical or mental condition be "in controversy" before an examination is appropriate.[4] *Cody* was an employment discrimination case in which the plaintiffs alleged mental and emotional distress. The court held that the claim of emotional distress did not ipso facto place the plaintiff's mental state in controversy.

The reasoning of *Cody* rested in large part on *Schlagenhauf* v. *Holder* (1964) 379 U.S. 104 [13 L.Ed.2d 152, 85 S.Ct. 234], in which the United States Supreme Court examined the "in controversy" requirement. In *Schlagenhauf* the plaintiffs were passengers injured when their bus collided with the rear of a truck. The defendant truck company, in answer to a cross-claim by the codefendant bus company, charged that the bus driver had been unfit to drive and moved to have him undergo a mental and physical examination. The Supreme Court recognized that at times the pleadings may be sufficient to put mental or physical condition in controversy, as when a plaintiff in a negligence action alleges mental or physical injury. (*Id.* at p. 119 [13 L.Ed.2d at p. 164, 85 S.Ct. 234].) But it determined that the driver had not asserted his mental condition in support of or in a defense of a claim, nor did the general charge of negligence put his mental state in controversy. (*Id.* at pp. 119-122 [13 L.Ed.2d at pp. 164-166, 85 S.Ct. 234].) *Schlagenhauf* thus stands for the proposition that one party's unsubstantiated allegation cannot put the mental state of another in controversy.

It is another matter entirely, however, when a party places his *own* mental state in controversy by alleging mental and emotional distress. Unlike the bus driver in *Schlagenhauf,* who had a controversy thrust upon him, a party who chooses to allege that he has mental and emotional difficulties can hardly deny his mental state is in controversy. To the extent the decision in *Cody, supra,* 103 F.R.D. 421, is inconsistent with this conclusion, we decline to follow it. (See also *Reuter* v. *Superior Court, supra,* 93 Cal.App.3d at p. 340.)

█ In the case at bar, plaintiff haled defendants into court and accused them of causing her various mental and emotional ailments. Defendants

---

[3] Unless otherwise noted, all further statutory references are to the Code of Civil Procedure, and this and all further references to sections 2016 to 2036 refer to the version of those sections operative until July 1, 1987.

[4] Because section 2032 was based on federal rule 35, judicial construction of the federal rule may be useful in construing section 2032. (*Reuter* v. *Superior Court* (1979) 93 Cal.App.3d 332, 337 [155 Cal.Rptr. 525].)

deny her charges. As a result, the existence and extent of her mental injuries is indubitably in dispute. In addition, by asserting a causal link between her mental distress and defendants' conduct, plaintiff implicitly claims it was not caused by a preexisting mental condition, thereby raising the question of alternative sources for the distress. We thus conclude that her mental state is in controversy.

We emphasize that our conclusion is based solely on the allegations of emotional and mental damages in this case. A simple sexual harassment claim asking compensation for having to endure an oppressive work environment or for wages lost following an unjust dismissal would not normally create a controversy regarding the plaintiff's mental state. To hold otherwise would mean that every person who brings such a suit implicitly asserts he or she is mentally unstable, obviously an untenable proposition.

Determining that the mental or physical condition of a party is in controversy is but the first step in our analysis. In contrast to more pedestrian discovery procedures, a mental or physical examination requires the discovering party to obtain a court order. The court may grant the motion only for good cause shown. (§ 2032, subd. (a).)[5]

Section 2036 defines a showing of "good cause" as requiring that the party produce specific facts justifying discovery and that the inquiry be relevant to the subject matter of the action or reasonably calculated to lead to the discovery of admissible evidence.[6] The requirement of a court order following a showing of good cause is doubtless designed to protect an examinee's privacy interest by preventing an examination from becoming an annoying fishing expedition. ■ While a plaintiff may place his mental state in controversy by a general allegation of severe emotional distress, the opposing party may not require him to undergo psychiatric testing solely on the basis of speculation that something of interest may surface. (*Schlagenhauf* v. *Holder, supra,* 379 U.S. at pp. 116-122 [13 L.Ed.2d at pp. 162-166, 85 S.Ct. 234].)

■ Plaintiff in the case at bar asserts that she continues to suffer diminished self-esteem, reduced motivation, sleeplessness, loss of appetite, fear, lessened ability to help others, loss of social contacts, anxiety, mental anguish, loss of reputation, and severe emotional distress. In their motion defendants pointed to these allegations. Because the truth of these claims is relevant to plaintiff's cause of action and justifying facts have been shown

---

[5] After July 1, 1987, this requirement is contained in section 2032, subdivision (d).

[6] This section has been repealed and has apparently not been replaced by equivalent language. There is no indication, however, that the Legislature intended repeal of former section 2036 to change the requirements for good cause in regard to mental examinations.

with specificity, good cause as to these assertions has been demonstrated. Subject to limitations necessitated by plaintiff's right to privacy, defendants must be allowed to investigate the continued existence and severity of plaintiff's alleged damages.

## II. *Privacy Limitations on the Scope of a Mental Examination*

If we find, as we do, that an examination may be ordered, plaintiff urges us to circumscribe its scope to exclude any probing into her sexual history, habits, or practices. Such probing, she asserts, would intrude impermissibly into her protected sphere of privacy. Furthermore, it would tend to contravene the state's strong interest in eradicating sexual harassment by means of private suits for damages. An examination into a plaintiff's past and present sexual practices would inhibit the bringing of meritorious sexual harassment actions by compelling the plaintiff—whose privacy has already been invaded by the harassment—to suffer another intrusion into her private life.

A right to privacy was recognized in the seminal case of *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]. It protects both the marital relationship (*ibid.*) and the sexual lives of the unmarried (*Eisenstadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029]). More significantly, California accords privacy the constitutional status of an "inalienable right," on a par with defending life and possessing property. (Cal. Const., art. I, § 1; *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222].) California's privacy protection similarly embraces sexual relations. (See *Fults* v. *Superior Court* (1979) 88 Cal.App.3d 899 [152 Cal.Rptr. 210]; *Morales* v. *Superior Court* (1979) 99 Cal.App.3d 283 [160 Cal.Rptr. 194].)

Defendants acknowledge plaintiff's right to privacy *in abstracto* but maintain she has waived it for purposes of the present suit. In addition, they urge us to take heed of their right to a fair trial, which they claim depends on a "meaningful" examination of plaintiff. Defendants contend they would not have requested a mental examination if plaintiff had simply brought a sexual harassment suit; but because she claims emotional and mental damage, they should be entitled to present expert testimony on the extent of the injury. Preparing such testimony, they suggest, requires not simply a mental examination, but one without substantial restrictions on its scope.

We cannot agree that the mere initiation of a sexual harassment suit, even with the rather extreme mental and emotional damage plaintiff claims to have suffered, functions to waive all her privacy interests, exposing her persona to the unfettered mental probing of defendants' expert. Plaintiff is not compelled, as a condition to entering the courtroom, to discard entirely

her mantle of privacy. At the same time, plaintiff cannot be allowed to make her very serious allegations without affording defendants an opportunity to put their truth to the test.

In *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr 695, 574 P.2d 766], we faced a similar conflict between discovery procedures and the parties' constitutional rights. The plaintiffs were property owners near an airport operated by the local port district. They sued the district for diminution of property values, personal injuries, and emotional disturbance brought about by the airport's activities. The defendant sought to discover the plaintiffs' entire medical history, including all illnesses, injuries, and mental or emotional disturbances for which they had sought treatment at any time in their lives. Furthermore, it asked for information regarding their membership in various community organizations.

Responding to the assertion that the plaintiffs had waived their right to privacy by bringing suit, we stated that "while the filing of a lawsuit may implicitly bring about a partial waiver of one's constitutional right of associational privacy, the scope of such 'waiver' must be narrowly rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by the fear of exposure of their private associational affiliations and activities." (*Id.* at p. 859.) Therefore, we noted, an implicit waiver of a party's constitutional rights encompasses only discovery directly relevant to the plaintiff's claim and essential to the fair resolution of the lawsuit. (*Id.* at p. 859; see also *In re Lifschutz* (1970) 2 Cal.3d 415, 431 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].)

Plaintiff's present mental and emotional condition is directly relevant to her claim and essential to a fair resolution of her suit; she has waived her right to privacy in this respect by alleging continuing mental ailments. But she has not, merely by initiating this suit for sexual harassment and emotional distress, implicitly waived her right to privacy in respect to her sexual history and practices. Defendants fail to explain why probing into this area is directly relevant to her claim and essential to its fair resolution. Plaintiff does not contend the alleged acts were detrimental to her present sexuality. Her sexual history is even less relevant to her claim. We conclude that she has not waived her right to sexual privacy.

But even though plaintiff retains certain unwaived privacy rights, these rights are not necessarily absolute. On occasion her privacy interests may have to give way to her opponent's right to a fair trial. Thus courts must balance the right of civil litigants to discover relevant facts against the privacy interests of persons subject to discovery. (*Valley Bank of Nevada* v.

*Superior Court* (1975) 15 Cal.3d 652, 657 [125 Cal.Rptr. 553, 542 P.2d 977].)

Before proceeding, we note the Legislature recently enacted a measure designed to protect the privacy of plaintiffs in cases such as these. ■ Section 2036.1 (operative until July 1, 1987; presently, substantially the same provision is contained in § 2017, subd. (d)), provides that in a civil suit alleging conduct that constitutes sexual harassment, sexual assault, or sexual battery, any party seeking discovery concerning the plaintiff's sexual conduct with individuals other than the alleged perpetrator must establish specific facts showing good cause for that discovery, and that the inquiry is relevant to the subject matter and reasonably calculated to lead to the discovery of admissible evidence.[7] (See also *Priest* v. *Rotary* (N.D.Cal. 1983) 98 F.R.D. 755.) We must determine whether the general balancing of interests embodied in this new legislation has obviated the need for us to engage in an individualized balancing of privacy with discovery in the case at bar.

In enacting the measure, the Legislature took pains to declare that "The discovery of sexual aspects of complainant's [*sic*] lives, as well as those of their past and current friends and acquaintances, has the clear potential to discourage complaints and to annoy and harass litigants. . . . Without protection against it, individuals whose intimate lives are unjustifiably and offensively intruded upon might face the 'Catch-22' of invoking their remedy only at the risk of enduring further intrusions into the details of their personal lives in discovery . . . . [¶] . . . Absent extraordinary circumstances, inquiry into those areas should not be permitted, either in discovery or at trial." (Stats. 1985, ch. 1328, § 1.)[8]

■ Nowhere do defendants establish specific facts justifying inquiry into plaintiff's zone of sexual privacy or show how such discovery would be

---

[7] Although the motion to order an examination was made before this provision went into effect, we apply the section to the case at bar because procedural changes generally govern pending as well as future cases. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 930-932 [154 Cal.Rptr. 503, 593 P.2d 200]; *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.* (1946) 29 Cal.2d 228, 232-233 [174 P.2d 441]; *Sour* v. *Superior Court* (1934) 1 Cal.2d 542, 545 [36 P.2d 373].)

[8] Plaintiff suggests that section 2036.1 does not adequately protect her privacy interests because section 2032 already requires "good cause" for a mental examination, and nothing is added by again requiring good cause for inquiry into a plaintiff's sexual history and practices. But the above quoted legislative declaration accompanying section 2036.1, i.e., that inquiry into sexuality should not be permitted absent "extraordinary circumstances," suggests that a stronger showing of good cause must be made to justify inquiry into this topic than is needed for a general examination. Furthermore, section 2032 merely requires good cause for the examination as a whole; in emotional distress cases that will often be present. By contrast, a defendant in a sexual harassment case desiring to ask sex-related questions must show specific facts justifying that particular inquiry.

relevant. Rather they make only the most sweeping assertions regarding the need for wide latitude in the examination. Because good cause has not been shown, discovery into this area of plaintiff's life must be denied.

Section 2036.1, thus amply protects plaintiff's privacy interests. We anticipate that in the majority of sexual harassment suits, a separate weighing of privacy against discovery will not be necessary. It should normally suffice for the court, in ruling on whether good cause exists for probing into the intimate life of a victim of sexual harassment, sexual battery, or sexual assault, to evaluate the showing of good cause in light of the legislative purpose in enacting this section and the plaintiff's constitutional right to privacy.

### III. *Presence of Counsel*

 In the event a limited psychiatric examination is proper, plaintiff urges us to authorize the attendance of her attorney. She fears that the examiner will stray beyond the permitted area of inquiry. Counsel would monitor the interview and shield her from inappropriate interrogation. And depicting the examination as an "alien and frankly hostile environment," she asserts that she needs her lawyer to provide her with aid and comfort.

Defendants, joined by amici California Psychiatric Association and Northern California Psychiatric Association, counter that a meaningful mental examination cannot be conducted with an attorney interposing objections. And if plaintiff's counsel is present, defense counsel would also seek to attend. Defendants maintain these adversaries would likely convert the examination into a chaotic deposition.

We contemplated whether counsel must be allowed to attend the psychiatric examination of a client in *Edwards* v. *Superior Court* (1976) 16 Cal.3d 905 [130 Cal.Rptr. 14, 549 P.2d 846]. The plaintiff in *Edwards* alleged that because of the defendant school district's failure to properly instruct and supervise users of school equipment, she sustained physical and emotional injuries. The trial court granted a motion compelling her to undergo a psychiatric examination alone. Holding that the plaintiff could not insist on the presence of her counsel, a majority of this court denied her petition for a peremptory writ.

The plaintiff in *Edwards* raised many of the points urged upon us here. She asserted that her attorney should be present to protect her from improper inquiries. We were skeptical that a lawyer, unschooled in the ways of the mental health profession, would be able to discern the psychiatric relevance of the questions. And the examiner should have the freedom to probe

deeply into the plaintiff's psyche without interference by a third party. (*Id.* at p. 911.) The plaintiff further suggested counsel should be present to lend her comfort and support in an inimical setting. We responded that an examinee could view almost any examination of this sort, even by her own expert, as somewhat hostile. Whatever comfort her attorney's handholding might afford was substantially outweighed by the distraction and potential disruption caused by the presence of a third person. (*Ibid.*) Finally, we concluded counsel's presence was not necessary to ensure accurate reporting. Verbatim transcription might inhibit the examinee, preventing an effective examination. Furthermore, other procedural devices—pretrial discovery of the examiner's notes or cross-examination, for example—were available for the plaintiff's protection. (*Id.* at pp. 911-912.)

A number of federal courts have since pondered this question. The court in *Zabkowicz* v. *West Bend Co.* (E.D.Wis. 1984) 585 F.Supp. 635, agreed that the plaintiff in an action charging sexual harassment and extreme emotional distress was entitled to have her attorney or a recording device present to ensure that the defendant's expert did not overstep his bounds. But in another federal case, *Lowe* v. *Philadelphia Newspapers* (E.D. Pa. 1983) 101 F.R.D. 296, the court ruled the plaintiff could not have counsel present at the psychiatric examination, although she could have a psychiatrist or other medical expert as an observer. In *Lowe* there were indications the defense had engaged in offensive tactics during discovery, which may explain the court's willingness to allow third parties into the examination. In contrast, in *Brandenburg* v. *El Al Israel Airlines* (S.D.N.Y. 1978) 79 F.R.D. 543, there were no signs portending abuse, and the court denied the plaintiff's request for the presence of her counsel. These cases suggest that in the federal courts a mental examinee has no absolute right to the presence of an attorney; but when the circumstances warrant it, the courts may fashion some means of protecting an examinee from intrusive or offensive probing.

Despite the dissent in *Edwards, supra,* 16 Cal.3d 905, 914 (dis. opn. by Sullivan, J., and Mosk, J.), we conclude that a reconsideration of that decision—which is barely 10 years old—is not justified.[9] ▉ We emphasize,

---

[9] Section 2032, subdivision (g) (operative July 1, 1987), now specifically provides for the attendance of an attorney at a *physical* examination. (See *Sharff* v. *Superior Court* (1955) 44 Cal.2d 508 [282 P.2d 896, 64 A.L.R.2d 494].) Subdivision (g)(2) states, however, that nothing in the discovery statutes shall be construed to alter, amend, or affect existing case law with respect to the presence of counsel or other persons during a mental examination by agreement or court order. Had the Legislature felt it desirable to have counsel present at psychiatric examinations, it would certainly have provided for this in its thorough revision of the section. Indeed, in the course of that revision the Legislature considered and rejected a provision that would have annulled our decision in *Edwards* by permitting counsel to attend a mental examination.

however, that *Edwards* should be viewed as standing for the proposition that the presence of an attorney is not *required* during a mental examination. In light of their broad discretion in discovery matters (see generally *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266]), trial courts retain the power to permit the presence of counsel or to take other prophylactic measures when needed.

 Plaintiff makes no showing that the court abused its discretion in excluding her counsel from the examination. Her fears are wholly unfounded at this point; not a shred of evidence has been produced to show that defendants' expert will not respect her legitimate rights to privacy or might disobey any court-imposed restrictions. Plaintiff's apprehension appears to derive less from the reality of the proposed analysis than from the popular image of mental examinations.

Plaintiff's interests can be adequately protected without having her attorney present. In the first place, section 2032 requires the court granting a physical or mental examination to specify its conditions and scope. We must assume, absent evidence to the contrary, that the examiner will proceed in an ethical manner, adhering to these constraints. And if plaintiff truly fears that the examiner will probe into impermissible areas, she may record the examination on audio tape. This is an unobtrusive measure that will permit evidence of abuse to be presented to the court in any motion for sanctions.[10]

Plaintiff refers us to the history of psychiatric examinations for victims of sexual assault. Such examinations were widely viewed as inhibiting prosecutions for rape by implicitly placing the victim on trial, leading to a legislative prohibition of examinations to assess credibility. (Pen. Code, § 1112; see also Note, *Psychiatric Examinations of Sexual Assault Victims: A Reevaluation* (1982) 15 U.C. Davis L. Rev. 973.) The victim of sexual harassment is analogous to the prosecutrix in a rape case, plaintiff asserts, and she points to legislative findings that discovery of sexual aspects of complainants' lives "has the clear potential to discourage complaints." (Stats. 1985, ch. 1328, § 1.) If we conclude on the basis of general considerations that a mental examination is appropriate and that it should occur without the presence of counsel, plaintiff urges us to adopt a special rule exempting those who bring harassment charges from either or both of these requirements.

We believe that in these circumstances such a special rule is unwarranted. In the first place, we should be guided by the maxim that *entia non sunt*

---

[10] We note that the new discovery act explicitly provides both examiners and examinees the opportunity to perpetuate the interview on audio tape. (§ 2032, subd. (g)(2) (operative July 1, 1987).)

*multiplicanda praeter necessitatem*: we should carve out exceptions from general rules only when the facts require it. The state admittedly has a strong interest in eradicating the evil of sexual harassment, and the threat of a mental examination could conceivably dampen a plaintiff's resolve to bring suit. But we have seen that those who allege harassment have substantial protection under existing procedural rules. In general it is unlikely that a simple sexual harassment suit will justify a mental examination. Such examinations may ordinarily be considered only in cases in which the alleged mental or emotional distress is said to be ongoing. When an examination is permitted, investigation by a psychiatrist into the private life of a plaintiff is severely constrained, and sanctions are available to guarantee those restrictions are respected.

Finally, the mental examination in this case largely grows out of plaintiff's emotional distress claim. We do not believe the state has a greater interest in preventing emotional distress in sexual harassment victims than it has in preventing such distress in the victims of any other tort.

The judgment of the Court of Appeal is reversed with directions to issue a peremptory writ of mandate compelling respondent court to limit the scope of the mental examination in accordance with the views expressed herein.

Lucas, C. J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.