[No. H015179. Sixth Dist. Oct. 31, 1996.]

CINDY DOYLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
DANIEL CALDWELL, Real Party in Interest.

## NOTICE TO SUBSCRIBERS

With the publication of this volume, 50 Cal.App.4th, no additional advance sheets for California Official Reports should be discarded. All advance sheets through 1996, No. 25 should previously have been discarded.

**BancroftWhitney**

POST OFFICE BOX 7005
SAN FRANCISCO
CALIFORNIA 94120-7005
1 (800) 848-4000

**COUNSEL**

Rogers, Joseph, O'Donnell & Quinn and Connie M. Teevan for Petitioner.

No appearance for Respondent.

Randall Widmann for Real Party in Interest.

**OPINION**

**MIHARA, J.**—This petition seeks to overturn an order compelling petitioner Cindy Doyle to undergo a mental examination and to pay monetary sanctions to real party Daniel Caldwell for opposing his motion to compel this mental examination. Doyle claims that this mental examination was not justified under Code of Civil Procedure section 2032 because her allegation that she had suffered emotional distress arising from Caldwell's alleged sexual harassment of her which was *not ongoing* and had ended in October 1994 did not place her "mental condition" in controversy in her sexual harassment action against Caldwell. We agree with Doyle that her allegation did not place her mental condition in controversy, and we issue a peremptory writ of mandate.

### BACKGROUND

From December 1992 through March 1994, Caldwell and Doyle were both employed by the same company, and Caldwell was Doyle's immediate supervisor. Doyle complained to Caldwell and to the company about Caldwell's alleged sexual harassment of her. In March 1994, the company terminated Caldwell's employment. In May 1994, Caldwell filed an action against the company for wrongful termination and against Doyle for defamation and interference with economic advantage. Caldwell claimed that Doyle's assertions that he had sexually harassed her were false. In July 1994, Doyle filed a cross-complaint against Caldwell and unnamed Doe defendants seeking damages for Caldwell's sexual harassment of her and creation of a "hostile working environment." She alleged that she "has suffered and continues to suffer lost income and benefits, severe emotional distress and mental anguish . . . ."

In January 1995, a special master was appointed to hear "all discovery disputes in this matter," and the appointment order provided that the special master's decisions "will be final save for the parties [*sic*] appellate rights." At her deposition in March 1995, Doyle testified that she was experiencing

stress from two miscarriages and a pregnancy during the period of time that she was being sexually harassed by Caldwell, but she was not experiencing any stress during that period as a result of her estrangement from her father. In June 1995, Caldwell brought a motion to compel a mental examination of Doyle and sought sanctions for Doyle's refusal to voluntarily submit to such an examination. Doyle opposed the motion on the grounds that (1) her mental condition had not been placed "in controversy" because she was seeking only "garden-variety" emotional distress damages for past mental distress ending in October 1994, (2) Caldwell had not shown "good cause" for ordering such an examination, and (3) Caldwell had failed to give the notice required by Code of Civil Procedure section 2032, subdivision (d) of the "conditions, scope and nature of the examination." The record provided by the parties does not contain any documentation that verifies that the special master ruled on Caldwell's motion to compel prior to December 1995, although numerous references by the parties indicate that the special master granted the motion conditioned on Caldwell giving the notice required by Code of Civil Procedure section 2032.

In November 1995, Doyle sought leave to amend her cross-complaint to reflect that her emotional distress resulting from Caldwell's conduct had ceased by October 1994. The proposed amendment was consistent with Doyle's deposition testimony. A hearing on Doyle's request for leave to file the amended pleading was scheduled for January 18, 1996. In February 1996, the superior court granted Doyle leave to file her amended cross-complaint. The amended cross-complaint deleted the allegation that Doyle "continues to suffer . . . severe emotional distress" and replaced it with an allegation that she "has suffered . . . emotional distress." In the amended cross-complaint, Doyle expressly limited her prayer for damages to "mental pain and suffering and emotional distress through October 1994."

On December 5, 1995, Caldwell transmitted a "disclosure pursuant to section 2032 of the California Code of Civil Procedure" to Doyle. This "disclosure" contained the following information. "Dr. Margo M. Leahy, a licensed psychiatrist who has been certified by the American Board of Psychiatry & Neurology since 1983, will conduct the examination with the assistance of Dr. Mary Ann Yaeil Kim, a licensed clinical psychologist with in excess of five (5) years of postgraduate experience in the diagnosis of mental and emotional disorders. [¶] Dr. Leahy will conduct a psychological and mental status examination which is comprised of interviewing and talking with the subject for approximately 2 hours in her office located at 1902 Webster St., San Francisco, CA. at 9:15 a.m. on January 12, 1996. [¶] As part of the IME [Independent Mental Examination] and to be used by Dr. Leahy in formulating her opinions, Dr. Kim will conduct a set of standard

psychological tests of the subject which include a question and answer session, the MMPI and other standard projective tests. The tests will be conducted at Dr. Kim's office located at 311 California St., Suite 720, San Francisco, CA. at 11:00 a.m. on January 9, 1995, and will take approximately 3 hours. [¶] Staff personnel of Dr.'s Leahy and Kim may be present to assist, if necessary."

Doyle immediately responded by objecting to this "disclosure." She asserted that the disclosure was inadequate because it did not identify "the scope of the examination" or the "specific diagnostic tests" that would be utilized. Caldwell responded to these objections by sending Doyle's attorney a letter in which he informed her that "Dr. Kim has informed me that the projective tests she will be conducting are the Rorschach Inkblot test, Thematic Apperception test, and the Rotter Incomplete Sentences test." At a hearing before the special master on December 18, 1995, the special master overruled Doyle's objections and found the disclosure adequate. The special master also assessed sanctions of $500 against Doyle. The special master thereafter rejected Doyle's request for a stay "without prejudice to seek a stay with the Superior Court." On January 18, 1996, the special master issued a written "order" overruling Doyle's objections, compelling Doyle to submit to a mental examination and assessing sanctions of $500 against Doyle on the ground that her "objections . . . were frivolous and were without substantial justification . . . ." This "order" and another "order" denying Doyle's request for a stay were filed in the superior court on January 26, 1996.

On February 2, 1996, Doyle brought a motion in the superior court "for an order to overrule the Special Master's ruling . . . ." She asserted that she could not be compelled to submit to a mental examination because her mental state was not "in controversy" and Caldwell had not shown "good cause" for compelling such an examination. Alternatively, she asserted that Caldwell's disclosure was inadequate because it had failed to "identify the scope" of the examination. On February 6, 1996, Doyle obtained an order from the superior court postponing the mental examination then scheduled for February 14 and 16 pending the superior court's decision on her motion. On February 21, 1996, Caldwell notified Doyle that he had rescheduled the mental examination for March 20 and 22, 1996. On March 20, 1996, the superior court filed an order rejecting Doyle's objections to the special master's orders. Doyle filed a timely petition in this court seeking a writ of mandate or prohibition directing the superior court to vacate its order and enter a new order either denying Caldwell's motion to compel a mental examination or limiting the scope of the mental examination. The superior court granted Doyle's request for a postponement of the mental examination

pending this court's decision on her petition. On May 8, 1996, we issued an alternative writ of mandate directing Caldwell to show cause why a peremptory writ of mandate should not be issued. We also stayed enforcement of the superior court's order compelling Doyle to submit to a mental examination.

## DISCUSSION

"Any party may obtain discovery, subject to the restrictions set forth in Section 2019, by means of a physical or mental examination of (1) a party to the action . . . in any action in which the mental or physical condition . . . of that party . . . is in controversy in the action." (Code Civ. Proc., § 2032, subd. (a).) "If any party desires to obtain discovery . . . by a mental examination, the party shall obtain leave of court. The motion for the examination shall specify the time, place, manner, conditions, scope, and nature of the examination, as well as the identity and the specialty, if any, of the person or persons who will perform the examination. . . . [¶] The court shall grant a motion for a physical or mental examination only for good cause shown. If a party stipulates that (1) no claim is being made for mental and emotional distress over and above that usually associated with the physical injuries claimed, and (2) no expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages, a mental examination of a person for whose personal injuries a recovery is being sought shall not be ordered except on a showing of exceptional circumstances. The order granting a physical or mental examination shall specify the person or persons who may perform the examination, and the time, place, manner, diagnostic tests and procedures, conditions, scope, and nature of the examination." (Code Civ. Proc., § 2032, subd. (d).) Monetary sanctions may be imposed for "opposing, unsuccessfully and without substantial justification, a motion to compel . . . discovery." (Code Civ. Proc., § 2023, subd. (a)(8).)

▮ Writ review is appropriate in discovery matters "only to review questions that are of general importance to the trial courts and the profession, and when broad principles can be enunciated to guide the courts in future cases." (*Vinson* v. *Superior Court* (1987) 43 Cal.3d 833, 838 [239 Cal.Rptr. 292, 740 P.2d 404].) Because the resolution of the tension between "the right of a defendant in a case alleging sexual harassment and emotional distress to conduct discovery and a plaintiff's countervailing right to privacy" involves Doyle's *constitutionally protected* right to privacy and no adequate remedy other than writ review is available to her, this issue is an

important one which merits writ review.[1] (43 Cal.3d at p. 838; *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 170-171, fn. 11 [84 Cal.Rptr. 718, 465 P.2d 854]; *Browne* v. *Superior Court* (1979) 98 Cal.App.3d 610, 613 [159 Cal.Rptr. 669].)

---

[1]Our review is of the superior court's order not the special master's "orders." Discovery matters were referred to the special master in this case by means of a court order apparently pursuant to Code of Civil Procedure section 639, subdivision (e). This order purported to provide that the special master's decisions "will be final save for the parties [sic] appellate rights." Caldwell attaches much importance to this language. We do not. "[T]he court may . . . direct a reference . . . [¶] . . . [¶] . . . [w]hen the court in any pending action determines in its discretion that it is necessary for the court to appoint a referee *to hear and determine* any and all discovery motions and disputes relevant to discovery in the action *and to report findings and make a recommendation thereon*." (Code Civ. Proc., § 639, subd. (e), italics added.) "An order of reference under section 639(e) of the Code of Civil Procedure to assist in the resolution of a discovery dispute shall: [¶] (1) Grant the referee the authority to . . . rule on objections, motions, and other requests made during the course of the hearing. [¶] (2) Require the referee to submit a written report to the parties and to the court within 20 days after the completion of the hearing, with a proposed order and any recommendation for the imposition of sanctions. [¶] (3) Require that objections to the report shall be served and filed no later than 15 calendar days after the report is mailed to counsel, that any party who objects to the report shall serve and file notice of a request for a hearing, and that copies of the objections and any responses shall be served upon the referee." (Cal. Rules of Court, rule 244.2(e).)

As both Code of Civil Procedure section 639, subdivision (e) and California Rules of Court, rule 244.2(e) make plain, a discovery referee does *not* have the authority to issue court orders. Instead, the discovery referee's power is limited to "report[ing] [its] findings and making a recommendation thereon" to the superior court "with a *proposed order* and any recommendation for the imposition of sanctions." (Code Civ. Proc., § 639, subd. (e); Cal. Rules of Court, rule 244.2(e)(2), italics added.) After the referee has submitted his or her report to the superior court, the parties may make objections to the referee's findings, recommendations and proposed orders and request a hearing in the superior court on these objections. ( Cal. Rules of Court, rule 244.2(e).)

The only logical conclusion which can be drawn from the rule and the statute is that a referee can only *propose or recommend* orders. The superior court must decide whether to accept or reject the referee's recommendations. In this case, the special master purported to issue an "order" compelling Doyle to submit to a mental examination. Doyle filed a motion in the superior court objecting to the special master's "orders" and asking the superior court to "overrule" the special master's "orders." Both the special master and the parties proceeded improperly. The special master should have submitted his findings and recommendations to the superior court along with his proposed orders. Doyle would then have had the opportunity to object to the special master's findings, recommendations and proposed orders before the superior court decided whether to accept or reject the special master's proposed orders. If the superior court rejected Doyle's objections, *it* would then issue the proposed orders.

Thus, technically, our review should be of an order *by the superior court* compelling Doyle to submit to a mental examination and imposing sanctions. However, since the superior court's order rejecting Doyle's objections to the special master's "orders" was, in substance, a decision to accept the special master's recommendations, it is appropriate for us to treat the superior court's order as an order compelling Doyle to submit to a mental examination and imposing sanctions. We do not review the special master's "orders."

Doyle claims that her "mental condition" was not "in controversy" within the meaning of Code of Civil Procedure section 2032, subdivision (a) in her action against Caldwell because, although she sought damages for emotional distress, she did not allege that this emotional distress was "on-going" but instead that her emotional distress had ended in October 1994.[2] Both Doyle and Caldwell rely on the California Supreme Court's decision in *Vinson*. Although *Vinson* considered and resolved a plaintiff's claim that her "mental condition" was not "in controversy" in a sexual harassment action, the holding in *Vinson* does not resolve the issue in this case because the California Supreme Court resolved the issue in *Vinson* "based solely on the allegations of emotional and mental damages *in this case*" and, unlike Doyle, the plaintiff in *Vinson* had alleged that her mental distress was "continuing." Consequently, *Vinson* is distinguishable.

In *Vinson*, the plaintiff brought an action for sexual harassment and intentional infliction of emotional distress in which she sought damages for "continuing" emotional distress. (*Vinson v. Superior Court, supra*, 43 Cal.3d at p. 837.) The defendants sought to compel a physical and mental examination of her "to test the true extent of her injuries and to measure her ability to function in the workplace." (*Id.* at p. 838.) The superior court granted the defendants' request. The plaintiff sought writ review. On review, the California Supreme Court rejected the plaintiff's claim that her mental condition was not placed "in controversy" by her allegation of continuing emotional distress. "[C]ourts must balance the right of civil litigants to discover relevant facts against the privacy interests of persons subject to discovery." (*Vinson* at p. 842.) "[A] party who chooses to allege that he *has* mental and emotional difficulties can hardly deny his mental state is in controversy." (*Vinson* at p. 839, italics added.) "[T]he existence and extent of her mental injuries is indubitably in dispute. In addition, by asserting a causal link between her mental distress and defendants' conduct, plaintiff implicitly claims it was not caused by a preexisting mental condition, thereby raising the question of alternative sources for the distress." (*Vinson* at p. 840.)

The California Supreme Court expressly based its holding in *Vinson* on the nature of the plaintiff's allegation of "continuing emotional distress."

---

[2]Caldwell has consistently based his contention that Doyle placed her mental condition in controversy on the allegations in Doyle's original July 1994 cross-complaint. Since Doyle's motion to amend her cross-complaint was pending at the time the special master made his decision to compel the mental examination and her motion had been granted and she had filed her amended cross-complaint before the superior court issued the order which is the subject of Doyle's petition, the relevant pleading is Doyle's amended cross-complaint. It is significant that the amended cross-complaint reflects that Doyle's emotional distress was not ongoing but ended after the filing of her original cross-complaint in which she had alleged that the emotional distress was ongoing.

"We emphasize that our conclusion is based *solely* on the allegations of emotional and mental damages *in this case*. A simple sexual harassment claim asking compensation for having to endure an oppressive work environment or for wages lost following an unjust dismissal would not normally create a controversy regarding the plaintiff's mental state. To hold otherwise would mean that every person who brings such a suit implicitly asserts he or she is mentally unstable, obviously an untenable proposition." (*Vinson* v. *Superior Court, supra*, 43 Cal.3d at p. 840, italics added.) "Plaintiff's *present* mental and emotional condition is directly relevant to her claim and essential to a fair resolution of her suit; she has waived her right to privacy in this respect by alleging *continuing* mental ailments." (*Vinson* at p. 842, italics added.) "[Mental] examinations may ordinarily be considered *only* in cases in which the alleged mental or emotional distress is said to be *ongoing*." (*Vinson* at p. 847, italics added.) "In general it is unlikely that a simple sexual harassment suit will justify a mental examination." (*Ibid.*)

Caldwell claims that the California Supreme Court was "faced [in Vinson] with exactly the question presented here . . . ." We disagree. As the California Supreme Court painstakingly and repeatedly explained in *Vinson*, its conclusion that the plaintiff had placed her mental condition in controversy was based *solely* on the plaintiff's allegation that she was *continuing* to suffer mental distress. Thus, the plaintiff's current mental condition was relevant because she had alleged that she had a *current* mental injury arising from the defendants' conduct. This logic does not apply to Doyle's allegation that she had suffered mental distress in the past arising from Caldwell's conduct. As used in Code of Civil Procedure section 2032, the word "condition" means "state of being." (Webster's Collegiate Dict. (10th ed. 1994) p. 240.) Logically, the statute's reference to a party's mental "state of being" could only refer to the party's current mental state rather than mental conditions which had been experienced in the past but were no longer in existence. In the absence of an allegation that Doyle had any current mental injury as a result of Caldwell's conduct, her present mental condition was not directly relevant to her allegation that she had suffered emotional distress in the past.

Caldwell suggests that a mental examination should be compelled because it will "test . . . the extent of the alleged distress . . . [and Doyle's] credibility." The only statutorily authorized justification for ordering a mental examination is that the "mental condition" of the examinee is "in controversy." Doyle's allegations do not reflect that her *current* mental condition has any relevance to "the extent" of the emotional distress she suffered in the past from Caldwell's sexual harassment of her. Mental examinations are not authorized for the purpose of testing a person's "credibility."

Caldwell asserts that a mental examination of Doyle should be compelled because Doyle admitted that she had suffered mental distress from other events which occurred during the same time period as Caldwell's alleged harassment of her. He claims that a mental examination may produce evidence that these other events, rather than Caldwell's alleged harassment, were the actual cause of her mental distress. He relies, obliquely, on the California Supreme Court's statement in *Vinson* that "by asserting a causal link between her mental distress and defendants' conduct, plaintiff implicitly claims it was not caused by a preexisting mental condition, thereby raising the question of alternative sources for the distress." (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 840.) Again, the allegation in *Vinson* was that the plaintiff was *currently* suffering mental distress. The mental condition of a person who is suffering *ongoing* mental distress is clearly "in controversy" in an action seeking damages for that ongoing mental distress. The "controversy" surrounding such a person's mental condition includes not only the nature and extent of the person's current mental injury but also the actual cause of this injury. In contrast, where a plaintiff alleges that she is not suffering any current mental injury but only that she has suffered emotional distress in the past arising from the defendant's misconduct, a mental examination is unnecessary because such an allegation alone does not place the nature and cause of the plaintiff's current mental condition "in controversy."

Federal cases interpreting rule 35(a) of the Federal Rules of Civil Procedure, upon which Code of Civil Procedure section 2032's requirements are based (*Vinson* v. *Superior Court, supra,* 43 Cal.3d at p. 839, fn. 4), are in accord with our conclusion that an allegation of *past* emotional distress is insufficient to place a plaintiff's mental condition in controversy. (*Curtis* v. *Express, Inc.* (N.D.N.Y. 1994) 868 F.Supp. 467, 468-469; *Bridges* v. *Eastman Kodak Co.* (S.D.N.Y. 1994) 850 F.Supp. 216, 222.) Accordingly, Doyle's allegation that she had suffered emotional distress in the past from Caldwell's conduct did not place her mental condition in controversy and therefore did not justify the superior court's order compelling her to submit to a mental examination. It follows that the court also erred in ordering her to pay sanctions. Her opposition to Caldwell's motion to compel was justified.

### Disposition

Let a peremptory writ of mandate issue directing the superior court to vacate its order rejecting Doyle's objections to the special master's "orders"

and enter a new order denying Caldwell's motion to compel a mental examination and denying Caldwell's request for sanctions. Doyle shall recover her costs.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.