Filed 12/30/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES WILLIAM BRAMMER,<br><br>    Defendant and Appellant. | B336058, B339829<br><br>(Los Angeles County<br>Super. Ct. No. PA066631) |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County, David W. Stuart, Judge. Affirmed with modifications (case No. B336058). Dismissed (case No. B339829).

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Steven E. Mercer and Zachary

Crvarich, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After serving close to 19 years in prison for robbery, defendant James William Brammer was released on parole. Eight months later, at age 57, he robbed 10 businesses, each time pointing a pellet gun at employees and taking money from the cash register. A jury convicted him of 13 counts of robbery and the trial court sentenced him under the "Three Strikes" law to 369 years to life.

A decade later, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) sent a letter to the trial court recommending the court resentence defendant under Penal Code[1] section 1172.1 in light of a change in the sentencing law giving trial judges new discretion to strike five-year prior conviction enhancements under section 667, subdivision (a)(1). The trial court recalled defendant's sentence, struck the prior conviction enhancements as well as the weapon enhancements, and resentenced defendant to 225 years to life.

In case No. B336058, defendant argues the trial court abused its discretion in resentencing him because an uncodified statement of intent in a 2023 bill amending section 1172.1 indicates resentencing should result in a "meaningful modification" that advances an inmate's release or parole consideration date. Defendant further contends his new sentence is substantively unreasonable because it does not account for his postconviction efforts at rehabilitation and his low risk of

_____

[1] Unspecified statutory citations are to the Penal Code.

2

reoffending.  Defendant also argues his resentencing counsel was ineffective for failing to raise certain arguments, and the trial court wrongly awarded postsentence conduct credits, which instead the CDCR should calculate.

We decline to read the uncodified statement of intent into section 1172.1 when the statute itself grants broad resentencing discretion to the trial court apart from prohibiting a sentence greater than the one originally imposed.  The trial court did not abuse its discretion in leaving the Three Strikes portion of the sentence in place given defendant's profound history of recidivism.  The arguments defendant contends his counsel should have made lack merit and counsel was thus not ineffective for not making them.  Defendant is correct, however, that the trial court erred in awarding postsentence conduct credits, a task that belongs to CDCR.  We modify the judgment to omit those credits.  As modified, we affirm the judgment.

In case No. B339829, defendant appeals from the trial court's decision to take no action on a motion to vacate his new sentence, which the trial court construed as a petition under section 1172.1.  The trial court's decision is not appealable, and we dismiss that appeal.

## BACKGROUND

### 1. *Conviction and sentencing*

Between December 12, 2009 and January 23, 2010, defendant robbed 10 businesses.  In each case, he pointed a pellet gun at one or more employees and took money from the cash register.  It is undisputed defendant did not physically harm anyone during the robberies.

Defendant was 57 years old at the time of the robberies. He also was on parole, having been released from prison in April 2009 after serving almost 19 years on a 1991 conviction for 12 counts of robbery.

For the offenses committed throughout December 2009 and January 2010, the jury convicted defendant of 13 counts of second degree robbery and found he had used a deadly and dangerous weapon in committing the offenses.[2] The trial court found defendant had three prior serious felony convictions for purposes of the enhancement under section 667, subdivision (a)(1) and the Three Strikes law.

The trial court sentenced defendant on each of the 13 counts to 41 years to life, consisting of a 25-year-to-life Three Strikes sentence plus 15 years for the three section 667, subdivision (a)(1) enhancements and one year for the weapon enhancement. The court stayed the terms on four counts under section 654. Defendant's total sentence on the nine remaining counts thus was 369 years to life. On appeal we modified the judgment to award defendant an additional day of custody credit and reduce the restitution and parole revocation fines and otherwise affirmed the judgment. (*People v. Brammer* (Jan. 30, 2015, B247917) [nonpub. opn.].)

---

[2] The jury acquitted defendant of two counts of attempted robbery arising from alleged incidents at a diversion program and a restaurant.

4

## 2.    *Resentencing*

### a.    *Letter from CDCR*

In December 2022, the Secretary of CDCR sent a letter to the trial court for the purpose of "provid[ing] the court with the authority to resentence [defendant] pursuant to . . . Section 1172.1, Subdivision (a)(1), based upon a change in sentencing law."  The letter explained, "Courts were previously barred from striking prior serious felony convictions for purposes of enhancement under [section 667, subdivision (a)(1)].  However, effective January 1, 2019, courts are now authorized to exercise their discretion to strike prior serious felony convictions for purposes of enhancement under this section, or to strike the punishment for the enhancement under this section, pursuant to [section] 1385."

The letter concluded, "[Defendant's] case factors have been compiled and thoroughly reviewed by the Director of Adult Institutions and myself.  In light of the court's newfound authority, and after personally reviewing [defendant's] commitment offense and in-prison conduct, I recommend that [defendant's] sentence be recalled and that they be resentenced in accordance with [section 1172.1, subdivision (a)(1)]."

The Secretary attached to the letter a "Cumulative Case Summary and Evaluation Report" (boldface & some capitalization omitted) summarizing defendant's commitment offenses, his criminal and parole history, and his conduct in prison.

Defendant's criminal history included a 1979 narcotics sale conviction, a 1981 forgery conviction, a 1981 assault conviction, a 1983 robbery conviction, a 1987 burglary conviction, a 1990 drug possession conviction, and the previously noted 1991 robbery

5

conviction. Between 1985 and 2013, defendant had been returned to custody from parole five times.

During his current incarceration, defendant had received two rules violation reports, one in 2017 for obstructing a peace officer and one in 2014 for "Misuse of State Property (Administrative)." He also received a counseling chrono in 2016 for disobeying an order. He was enrolled in college studying "the Neuroscience of Learning." His work supervisors gave him positive reports, with his most recent report grading his performance as "exceptional." He is eligible for elderly parole consideration "no later than January 25, 2030."

   *b. Resentencing proceedings in the trial court*

After receiving the letter, the trial court appointed counsel for defendant. Defense counsel filed a resentencing memorandum emphasizing defendant's positive progress and conduct in prison. Counsel provided a biography describing defendant's difficulties with his parents when he was a child, and contending his crimes stemmed from addiction to alcohol, cocaine, and other controlled substances. Counsel argued defendant presented a low risk to public safety given he was 71 years old and had demonstrated a commitment to rehabilitation. Counsel requested the court strike the section 667, subdivision (a)(1) enhancements and the Three Strikes sentences, and argued defendant was entitled to the low term because of "childhood trauma." In conclusion, counsel asked the court to resentence defendant to time served.

The People filed a response noting defendant's "lengthy criminal history," including "many parole revocations, with very short intervals of crime-free behavior." The People contended defendant had not participated in any self-help groups and "has

6

done nothing to address his substance abuse issues." "Neither age nor the likelihood of a long prison sentence deterred [defendant] from committing serious and violent offenses." The People recommended the trial court resentence defendant to 37 years to life in prison. It is not clear from the record how the People calculated this recommendation — the People suggested the trial court "strike the 'five-year' priors and strike a prior on the remaining counts," but did not expressly address the Three Strikes sentences.

At the resentencing hearing on February 8, 2024, the trial court denied defendant's request to strike his Three Strikes sentences. The court stated, "[I]t wasn't a close call back in 2013 when [defendant] was sentenced, and it's still not a close call on the [Three Strikes] issue. He served a 19-year sentence or 18-year sentence for a string of robberies, [and] was on parole when he committed an even longer string of robberies in our current case. He has a long history. [¶] And as far as aging out of being a risk to commit future crimes, [defendant] was 57, I believe, when the current crimes were committed, so for all those reasons, the [motion to strike the strikes] is denied."

Defense counsel requested the court strike the section 667, subdivision (a)(1) enhancements and the weapon enhancements. The court stated it would do so, and "will give [defendant] credit for the fair amount of programming that he has done in the state prison: anger management, education, and . . . vocational." The court resentenced defendant to 25 years to life on all 13 counts, and again stayed imposition of sentence on four of the counts under section 654, resulting in a total sentence of 225 years to life.

7

Defendant timely appealed from the judgment imposing the new sentence.

### 3. *Motion to vacate judgment*

On May 3, 2024, while his appeal was pending, defendant in pro. per. filed a "Motion to Vacate Judgment and Enter the Statement and Documents of the Defendant that Defense Counsel Waived on February 8, 2024, In Order to Have Adequate Record on Direct Review Proceedings in the Second Appellate District." (Some capitalization omitted.) In the motion, defendant argued, inter alia, he had been unable to make a statement and present evidence at the resentencing hearing, and the People's response to defense counsel's resentencing memorandum was untimely and contained errors.

On May 24, 2024, the trial court issued a written order construing defendant's motion as a petition to recall his sentence under section 1172.1. The court stated defendant was not entitled to file such a petition, nor was the court required to respond. "Accordingly, the court will take no further action on the defendant's petition and the defendant may pursue all appropriate appellate remedies."

Defendant filed a notice of appeal from the May 24, 2024 ruling. We granted defendant's request to consolidate that appeal with his earlier appeal from the judgment imposing the new sentence.

## DISCUSSION

### A. Section 1172.1

Section 1172.1 sets forth procedures for recalling the sentences of and resentencing criminal defendants. As relevant

8

here, the statute authorizes the trial court, "upon the recommendation of [the Secretary of CDCR]," to "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, . . . provided the new sentence, if any, is no greater than the initial sentence."[3] (§ 1172.1, subd. (a)(1).) The Secretary's recommendation creates "a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety . . . ." (*Id.*, subd. (b)(2).)

In recalling and resentencing, the court "shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(2).) "[T]he court shall consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.

---

[3] The Secretary is one of several officials who may recommend recall and resentencing. (See § 1172.1, subd. (a)(1).) The trial court may also recall and resentence on its own motion "within 120 days of the date of commitment or at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law." (*Ibid.*)

Evidence that the defendant's incarceration is no longer in the interest of justice includes, but is not limited to, evidence that the defendant's constitutional rights were violated in the proceedings related to the conviction or sentence at issue, and any other evidence that undermines the integrity of the underlying conviction or sentence.  The court shall consider if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, if the defendant was a victim of intimate partner violence or human trafficking prior to or at the time of the commission of the offense, or if the defendant is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense."  (§ 1172.1, subd. (a)(5).)

We review the trial court's decision whether to recall and resentence a defendant for abuse of discretion.  (*People v. McCallum* (2020) 55 Cal.App.5th 202, 211.)  We review questions of statutory interpretation de novo.  (*People v. Serna* (2025) 109 Cal.App.5th 563, 569.)

## B.     The Trial Court's New Sentence Was Not an Abuse of Discretion

Defendant raises two arguments in support of his claim of abuse of discretion.  First, defendant argues the Legislature's uncodified statement of intent when amending section 1172.1 required the trial court in this case to reduce defendant's sentence sufficiently to advance his dates for release or parole

10

consideration.[4]  Second, he argues his new sentence is substantively unreasonable because the trial court did not properly account for defendant's record in custody and low risk of reoffending.

### 1. The trial court was not required to advance defendant's dates of release or parole eligibility

Assembly Bill No. 600 (Reg. Sess. 2023–2024) amended section 1172.1 effective January 1, 2024.[5]  In the uncodified portion of the bill, the Legislature stated, "It is the intent of the Legislature that, in cases where the judge concludes that recall and resentencing pursuant to Section 1172.1 of the Penal Code is

---

[4] A related issue is pending before our Supreme Court in *People v. Andrews*, S290832, a review of an unpublished decision of the Fifth District Court of Appeal.  The questions presented in that case, as articulated by the high court, are:  "(1) If a trial court recalls a defendant's sentence upon recommendation of the Secretary of the Department of Corrections and Rehabilitation pursuant to Penal Code section 1172.1, is there a presumption that the defendant will not be resentenced to the same effective term? (2) Did the trial court abuse its discretion by resentencing defendant to the same effective term?" (<https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=3130894&doc_no=S290832&request_token=NiIwLSEnTkg9W1BdSCJdSEJIMEw0UDxTKiJeJzlTUCAgCg%3D%3D> [as of Dec. 24, 2025], archived at <https://perma.cc/ZC57-GV78>.)

[5] The amendments, inter alia, empower the trial court to recall and resentence a defendant on its own motion at any time if there is a change in applicable sentencing laws, without a recommendation from the Secretary or other officials.  (Stats. 2023, ch. 446, § 2.)

appropriate, the resentencing result in a meaningful modification. 'Meaningful modification' means it will cause some actual change in the person's circumstances, including, but not limited to, immediate release, earlier release, and newly acquired entitlement to review by the Board of Parole Hearings or the advancement of eligibility for a parole hearing." (Stats. 2023, ch. 446, § 1, subd. (d).)

Defendant argues the trial court's resentencing did not result in a "meaningful modification" because the new sentence of 225 years does not, as a practical matter, advance his release date or opportunity for parole consideration.

Uncodified statements of intent "do not confer power, determine rights, or enlarge the scope of a measure," although they "properly may be utilized as an aid in construing a statute." (*People v. Canty* (2004) 32 Cal.4th 1266, 1280.) That said, "[i]f the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs," with no need for "judicial construction." (*People v. Johnson* (2002) 28 Cal.4th 240, 244.)

Here, the plain language of section 1172.1 does not require the trial court to recall a defendant's sentence at all, much less reduce it by any particular amount. Rather, the statute states the court "may" recall the sentence, and "may" "[r]educe a defendant's term of imprisonment." (§ 1172.1, subds. (a)(1), (a)(3).) Should the court choose to resentence the defendant, it "may" do so "in the same manner as if [the defendant] had not previously been sentenced, . . . provided the new sentence, if any, is no greater than the initial sentence." (*Id.*, subd. (a)(1).)

In contrast, other parts of the statute use the term "shall," including that the trial court "shall apply the sentencing rules of

12

the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion," "shall consider postconviction factors," and "shall state on the record the reasons for its decision to grant or deny recall and resentencing." (§ 1172.1, subds. (a)(2), (a)(5), (a)(7).)

"Under 'well-settled principle[s] of statutory construction,' we 'ordinarily' construe the word 'may' as permissive and the word 'shall' as mandatory, 'particularly' when a single statute uses both terms. [Citation.] In other words, '[w]hen the Legislature has, as here, used both "shall" and "may" in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively.' [Citation.]" (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542.) In short, the plain language of section 1172.1 establishes the trial court has broad discretion in determining the new sentence, the only limitation being that it not exceed the length of the original sentence.

We also cannot ignore that the Legislature could have, but did not, include the statement of intent in the operative text of section 1172.1. Defendant is asking us to read into the statute language the Legislature expressly relegated to an uncodified portion of the enacting legislation. This " 'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes. [Citations.] . . . .' [Citation.]" (*People v. Guzman* (2005) 35 Cal.4th 577, 587.)

Defendant concedes, "[U]ncodified sections of a statute have no independent power" but contends we must apply Assembly Bill No. 600's uncodified statement of intent to prevent an "absurd" result that renders the Secretary's resentencing recommendation an "idle act." Defendant argues, "Presumably,

13

the Secretary did not go to the trouble of issuing a recall recommendation just to turn an elderly inmate's three-century sentence into a two-century sentence."

We reject defendant's contention that the trial court's new sentence rendered the Secretary's recommendation an "idle act." That recommendation allowed defendant to obtain counsel and seek reconsideration of his original sentence in light of changes in the law and defendant's postconviction history. That the reconsideration did not turn out as defendant hoped did not make the Secretary's recommendation meaningless—it provided defendant with a chance at resentencing he otherwise would not have had.

Defendant argues *Vinson v. Superior Court* (1987) 43 Cal.3d 833 (*Vinson*) and *Doe v. Superior Court* (2023) 15 Cal.5th 40 (*Doe*) support his position that Assembly Bill No. 600's uncodified statement of intent compels reversal in this case.

*Vinson* involved the claims of a sexual harassment plaintiff alleging, inter alia, emotional and mental health damages. (*Vinson*, *supra*, 43 Cal.3d at p. 837.) Pursuant to then-existing discovery statutes, the defendants sought a court order for a psychiatric examination, including probing into the plaintiff's sexual history. (*Id.* at p. 838.) Asserting her right to privacy, the plaintiff opposed such discovery. (*Ibid.*) Our high court held the plaintiff's allegations of continuing mental and emotional health damage put her mental health "in controversy" and provided "good cause" for discovery on that topic under Code of Civil Procedure former section 2032. (*Vinson*, at pp. 839–841.). In contrast, those allegations alone did not "establish specific facts showing good cause [for probing into her sexual history], and that

14

the inquiry is relevant to the subject matter and reasonably calculated to lead to the discovery of admissible evidence" as required by Code of Civil Procedure former section 2036.1. (*Vinson*, at p. 843.)

In a footnote, the high court addressed the plaintiff's argument that Code of Civil Procedure former section 2036.1 "d[id] not adequately protect her privacy interests" because Code of Civil Procedure former section 2032 "already requires 'good cause' for a mental examination, and nothing is added by again requiring good cause for inquiry into a plaintiff's sexual history and practices" under Code of Civil Procedure former section 2036.1. (*Vinson*, *supra*, 43 Cal.3d at p. 843, fn. 8.) The court disagreed, citing an uncodified legislative declaration accompanying Code of Civil Procedure former section 2036.1 stating "that inquiry into sexuality should not be permitted absent 'extraordinary circumstances.' " (*Vinson*, at p. 843, fn. 8.) The court read this legislative declaration to "suggest[ ] that a stronger showing of good cause must be made to justify inquiry into this topic than is needed for a general examination." (*Ibid.*)

*Vinson* is distinguishable from the instant case. *Vinson* relied on an uncodified legislative declaration to resolve a statutory ambiguity, namely whether the "good cause" requirements under Code of Civil Procedure former sections 2032 and 2036.1 differed from one another. Here, there is no ambiguity requiring judicial construction—section 1172.1 imposes no requirements on the length of a new sentence apart from not exceeding the original sentence. Indeed, it does not require the trial court to reduce a defendant's sentence at all. Importing the uncodified "meaningful modification" language into the statute would not be mere interpretation, but rather a

15

rewriting of the statute. *Vinson* does not support such an outcome.

*Doe* concerned Evidence Code sections 1106 and 783, which govern the admission of sexual history evidence to impeach plaintiffs in civil cases alleging sexual harassment, sexual assault, or sexual battery. (*Doe*, *supra*, 15 Cal.5th at p. 46.) The version of Evidence Code section 1106 in effect at that time prohibited admission of evidence of the plaintiff's sexual history to prove consent or absence of injury, but did not " 'make inadmissible any evidence offered to attack the credibility of the plaintiff as provided in Section 783.' " (*Doe*, at p. 46.)[6] Evidence Code section 783 in turn sets forth procedures a court must follow before admitting sexual history evidence for purposes of impeachment, including receiving an offer of proof supported by written motion and affidavit, holding a hearing out of the presence of the jury, making findings under Evidence Code section 352, and issuing an order stating what evidence may be introduced. (*Doe*, at pp. 56–57.)

In *Doe*, the plaintiff claimed she was sexually abused by a teacher in the defendant school district when she was eight years old. (*Doe*, *supra*, 15 Cal.5th at p. 46.) The defendant sought to introduce evidence of the plaintiff's subsequent molestation by a different person to demonstrate the later molestation "caused at

---

[6] Evidence Code section 1106 has since been amended to read, "This section shall not be construed to make inadmissible any evidence offered to attack the credibility of the plaintiff's testimony *as to something other than consent or absence of injury* as provided in Section 783." (Evid. Code, § 1106, subd. (e), italics added; Stats. 2024, ch. 993, § 1.)

16

least some of [the] plaintiff's emotional distress injuries and related damages." (*Ibid*.)

The trial court admitted the evidence of the subsequent molestation of the plaintiff. (*Doe*, *supra*, 15 Cal.5th at p. 50.) In doing so, the trial court conducted an analysis under Evidence Code section 352, but the Supreme Court held the trial court did not comply with the other procedural requirements of Evidence Code section 783. (*Doe*, at pp. 49–50, 67.) The defendant argued the high court should nonetheless hold the trial court "ultimately properly exercised its discretion under [Evidence Code] section 352." (*Doe*, at p. 67.)

The high court "decline[d] to do so," in part because it appeared from the record that "the trial court viewed the inquiry into prejudicial effect under [Evidence Code] section 352 as posing a mere garden-variety evidentiary question, without bearing in mind the applicable special considerations governing that inquiry in the current setting." (*Doe*, *supra*, 15 Cal.5th at pp. 67–68.) The high court cited criminal cases concerning the admission of a victim's sexual history that "emphasiz[ed] the discovery or admission should be subject to especially careful scrutiny in order to avoid unwarranted intrusion into a victim's private life." (*Id*. at p. 68.) The court concluded those principles applied equally in the civil context. In doing so, it cited the uncodified legislative declaration relied upon in *Vinson*, and *Vinson*'s conclusion from that declaration that discovery of a plaintiff's sexual history requires a stronger showing of good cause than otherwise required. (*Doe*, at pp. 68–69.) The court found the record did not indicate the trial court had conducted its Evidence Code section 352 analysis "keeping in mind 'the policy of . . . "guarding against unwarranted intrusion into the victim's

17

private life," ' " nor did it "conduct[ ] an appropriate [Evidence Code] section 352 analysis under the applicable civil law statutes, [Evidence Code] sections 1106 and 783." (*Doe*, at p. 69.)

In a footnote, however, the high court rejected the proposition that "the Legislature's uncodified 'extraordinary circumstances' language" relied upon in *Vinson* requires a defendant to " 'demonstrate some extraordinary circumstance attendant to [the] plaintiff's claim' before [discovery concerning sexual assault] may be allowed." (*Doe*, *supra*, 15 Cal.5th at p. 69, fn. 14.) The court stated, "[W]e view the Legislature's uncodified language not as imposing a standard or condition for discovery or admission, but as an interpretive aid in construing the statutory scheme." (*Ibid.*)

This footnote is fatal to defendant's argument that *Doe* supports reversal here. In asking us to import the uncodified "meaningful modification" language into section 1172.1, defendant urges us to do what the *Doe* court expressly did not do, namely read uncodified legislative language to "impos[e] a standard or condition" that does not appear in the operative statutory language. (*Doe*, *supra*, 15 Cal.5th at p. 69, fn. 14.) Defendant wishes us to interpret section 1172.1 to *require* that the new sentence imposed thereunder advance his release or parole consideration. This goes well beyond using the uncodified language as "an interpretive aid." (*Doe*, at p. 69, fn. 14.)

In sum, the trial court did not abuse its *statutory* discretion in striking more than a third of defendant's original sentence even if that new sentence did not, as a practical matter, advance his opportunity for release or parole consideration.

### 2. Defendant's new sentence is not substantively unreasonable

Defendant contends his new sentence is substantively unreasonable because it remains punitive while not accounting for his progress in prison and low risk of reoffending. He argues, "The letter and spirit of section 1172.1 are that once the trial court decides to recall and reduce [defendant's] sentence, considerations of punishment are in the past." "The ultimate question is not punishment but the fairness of ongoing incapacitation."

Defendant observes that punishment is not listed among the factors section 1172.1 directs the trial court to consider in exercising its discretion. Instead, the statute directs the trial court to consider postconviction factors such as the defendant's discipline and rehabilitation record, whether defendant's age and physical condition reduce his risk for future violence, and any other evidence indicating "continued incarceration is no longer in the interest of justice," including evidence undermining the integrity of the original conviction, evidence of trauma, and evidence of the defendant's youth at the time of the commitment offenses. (§ 1172.1, subd. (a)(5).)

We reject defendant's argument that punishment is not a proper consideration under section 1172.1 merely because it is not expressly listed among the factors courts "shall" consider. As the Attorney General points out, the statute expressly directs the trial court to "apply the sentencing rules of the Judicial Council," and California Rules of Court, rule 4.410(a)(2) lists "[p]unishing the defendant" as one of the "[g]eneral objectives of sentencing."

Even if arguendo punishment were not a proper consideration under section 1172.1, the trial court did not list

19

punishment as a factor in its exercise of discretion to resentence defendant. Instead, the court identified defendant's risk of reoffending, noting 19 years in prison for 12 robbery convictions did not deter defendant from committing 13 more robberies at the age of 57 mere months after his release. The court expressly rejected the argument that defendant had "ag[ed] out of being a risk to commit future crimes." The court's concern was not punishment, but keeping a recalcitrant and repeat offender off the streets.

Defendant implies the trial court's conclusion is not consistent with the Secretary's letter recommending resentencing, which defendant contends "is akin to an 'exceptional conduct' referral, under which the inmate's readiness to be released is the assumption."

This is not a credible argument. The Secretary's letter makes no reference to exceptional conduct or readiness for release. The fact that defendant's cumulative case summary and evaluation report attached to the Secretary's letter noted his work supervisor rated him "exceptional" does not translate to an "exceptional conduct" referral. The Secretary did not refer to that rating in her letter or otherwise indicate her belief defendant should be released or granted an earlier parole consideration date.

The Secretary's letter instead indicated the resentencing recommendation was "based upon a change in sentencing law," specifically the Legislature granting courts the authority to strike the previously mandatory enhancements under section 667, subdivision (a)(1). Although the Secretary states she has "thoroughly reviewed" defendant's "case factors" including his "commitment offense and in-prison conduct," her letter draws no

20

conclusions from that information apart from recommending resentencing. Notably, the Secretary does not suggest a particular sentence, just that the trial court reconsider defendant's sentence in light of the court's "newfound authority" to strike section 667, subdivision (a)(1) enhancements. The trial court did so, striking those enhancements as well as the weapons enhancements. There is no tension between the trial court's actions and the Secretary's recommendation.

Defendant argues the Secretary's letter must be read as a recommendation to advance defendant's release or parole consideration dates, because otherwise, he asks, "[W]hat was the point? It could not have been the 'trifle' of a reduction" granted by the trial court. He contends, "[Defendant] was referred for resentencing because it was unjust for him to wait [until he was eligible for elderly parole consideration] to be released. The Secretary did not issue the referral focusing on [defendant's] conduct just so that the court would consider striking 144 years from a 369 year sentence. That would waste the court's time and accomplish nothing."

To reiterate, the Secretary's letter provided an opportunity for reconsideration of defendant's sentence in light of changes to sentencing laws, which supported the recommendation regardless of the sentence the trial court ultimately imposed.

We reject defendant's characterization of the Secretary's letter as "focusing on [defendant's] conduct" or asserting defendant's continued incarceration was "unjust," when the Secretary used no such language. Further, even if arguendo the letter could be read to recommend earlier release or parole consideration, the trial court did not have to follow that recommendation. When the Secretary recommends the court

21

recall a sentence, section 1172.1 "provides for a presumption regarding recalling and resentencing a defendant, but not a presumption as to a particular sentence recommended by the Secretary." (*People v. Braggs* (2022) 85 Cal.App.5th 809, 819.)

Defendant argues *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*) supports his argument his sentence is substantively unreasonable. In *Avila*, the defendant was convicted in 2018 of attempted second degree robbery and attempted extortion after he demanded "rent" money from two sidewalk fruit vendors and squashed several bags of their oranges. (*Id.* at p. 1139.) The defendant admitted to three previous strike convictions: a second degree robbery and assault with a knife in 1990 when he was 18 years old, and a second degree robbery in 1992 when he was 20 years old. (*Id.* at pp. 1140–1141.) The trial court denied his motion to strike his three strikes and sentenced him to 25 years to life plus 14 years. (*Id.* at p. 1139.)

Division Three of this court held the trial court abused its discretion by denying the motion. (*Avila*, *supra*, 57 Cal.App.5th at p. 1138.) The appellate court reasoned the trial court incorrectly believed it could not consider as mitigating factors either the remoteness of the strike offenses or the defendant's youth at the time he committed those strike offenses. (*Id.* at pp. 1141–1142.) The appellate court concluded those factors weighed in favor of granting the motion because the strikes were "committed when [the defendant] was of diminished culpability based on his age," and the defendant had not committed a violent felony since, "showing that the severity of his record is decreasing." (*Id.* at pp. 1143, 1145.) His last felony offense had been in 2008 for drug possession, an offense since reclassified as a misdemeanor. (*Id.* at p. 1143.)

The appellate court disagreed with the trial court's characterization of the commitment offenses — the attempted robbery and attempted extortion — as "brutal" and "violent," when the defendant "did not use a weapon or otherwise use physical violence against the victims, nor did he make any specific threats. He squashed oranges." (*Avila, supra*, 57 Cal.App.5th at p. 1142.) Although subsequent to his strike offenses he had been convicted of a number of less serious offenses, "[m]uch of his criminal conduct appears to be related to his drug addiction rather than to sinister motives and falls well outside the realm of what could be considered the work of a career criminal." (*Id.* at p. 1145.)

The appellate court further noted that the defendant was 47 years old at the time of sentencing, and the sentence imposed "means he will likely die in prison." (*Avila, supra*, 57 Cal.App.5th at p. 1144.) "The length of a sentence is the 'overarching consideration' in deciding whether to strike a prior conviction because the underlying purpose of striking a prior conviction is the avoidance of unjust sentences." (*Ibid.*)

In addition to finding the trial court had abused its discretion, the appellate court concluded the sentence imposed constituted cruel and unusual punishment under the California Constitution: "Life in prison for destroying fruit, even when done by someone with a criminal record in the course of an attempted robbery, robs recidivist sentencing of its moral foundation and renders the solemn exercise of judicial authority devoid of meaning." (*Avila, supra*, 57 Cal.App.5th at p. 1151.)

*Avila* held it was unjust and unconstitutional to sentence a 47 year old to life in prison based on crimes he committed decades earlier at ages 18 and 20, when his current offense was,

as the appellate court put it, "squash[ing] oranges." (*Avila*, *supra*, 57 Cal.App.5th at p. 1142.) In contrast, here, defendant robbed 10 businesses at gunpoint. Prior to those offenses, he was convicted of 12 other robberies, not in his teen or young adult years, but when he was nearly 40. Defendant's lack of criminal activity between 1991, when he was convicted of the 12 robberies, and 2009 and 2010, when he committed his most recent robberies, cannot be attributed to rehabilitation or personal restraint, but rather to his incarceration during that period. Indeed, he reoffended within months of his release. The trial court did not abuse its discretion in concluding defendant was "within the spirit of the three strikes law." (*People v. Carmony* (2004) 33 Cal.4th 367, 379.)

Defendant argues his circumstances are analogous to those in *Avila* because "they involved no real violence" and were "attributable to youthful trauma and substance abuse." Even if one accepted that characterization, the trial court acted within its discretion in leaving the Three Strikes sentence in place given the numerosity of defendant's crimes and his demonstrated recidivism after release from a lengthy prior sentence.

## C. Defendant Fails To Demonstrate His Counsel Was Ineffective

Defendant argues his resentencing counsel was constitutionally ineffective because counsel did not call the trial court's attention to the fact that the new sentence did not advance defendant's parole date, nor did counsel argue that punishment is not relevant to whether continued incarceration is in the interest of justice.

To establish ineffective assistance of counsel, "a defendant must show that their counsel's performance was deficient, and

24

that this deficient performance prejudiced the defense." (*In re Tellez* (2024) 17 Cal.5th 77, 88 (*Tellez*), italics omitted.)[7]

We have rejected defendant's arguments that the trial court was obliged to advance his parole date or could not consider punishment in resentencing him. Counsel therefore was not deficient for failing to make these unmeritorious arguments. We thus need not consider whether counsel's failure to raise these contentions prejudiced the defendant. (*Tellez, supra*, 17 Cal.5th at p. 88 ["A reviewing court . . . need not address both elements [of an ineffective assistance of counsel claim] if one is not satisfied."].)

**D.  The Trial Court Erred In Awarding Additional Conduct Credits**

Defendant argues the trial court erred in awarding him additional conduct credits accrued since his original sentence. Defendant contends CDCR instead is responsible for calculating and awarding those credits.[8] We agree.

---

[7] We assume arguendo a defendant may raise an ineffective assistance of counsel claim in a postconviction proceeding based on ameliorative legislation. (But see *People v. Delgadillo* (2022) 14 Cal.5th 216, 226 [" 'there is no constitutional right to the effective assistance of counsel' in state postconviction proceedings"].)

[8] Defendant contends CDCR's formula for awarding conduct credits is more generous than the formula utilized by the trial court. We express no opinion as to the formula CDCR should employ.

### 1. Additional background

At the resentencing hearing, the trial court noted defendant when originally sentenced had 1,130 days of custody credit plus 169 days of conduct credit at 15 percent. The court ordered CDCR to recalculate defendant's current credits in light of the new sentence. Defense counsel stated defendant had an additional 3,999 days custody credit since his original sentencing. The court added, it "will recalculate the credits then," and "have them [CDCR] check" the calculation. The court calculated 5,898 total credits, which consisted of 5,129 days of custody credit, the original 169 days of conduct credit, and 600 additional days of conduct credit (that is, 15 percent of the 3,999 additional days of custody credit). The amended abstract of judgment matched the court's calculation.

### 2. Analysis

Although the trial court must calculate and award conduct credits for a defendant's time in custody before sentencing, "[o]nce a person begins serving his prison sentence, he is governed by an entirely distinct and exclusive scheme for earning credits to shorten the period of incarceration," a scheme "established and administered" by CDCR. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 31 (*Buckhalter*); see *In re Martinez* (2003) 30 Cal.4th 29, 37 ["Calculation of the actual days of conduct credit earned by petitioner during her [postsentence] confinement should be left to prison authorities."].) Defendant is correct that CDCR, not the trial court, should calculate the conduct credits to which defendant is entitled since he began serving his original sentence.

26

Although the Attorney General agrees CDCR is responsible for calculating conduct credits, the Attorney General argues the issue is not cognizable on appeal because defendant "has not shown that he received an unauthorized sentence or was harmed by any error below." We do not understand this argument. The trial court calculated and awarded 600 days of postsentence conduct credit, which it was not authorized to do. Defendant is entitled to have those credits omitted from the judgment so CDCR can conduct its own calculation.

The trial court, however, correctly awarded the 5,129 days of custody credit for the time defendant has spent in custody both pre- and postsentence. (*Buckhalter*, *supra*, 26 Cal.4th at p. 37 [under § 2900.1, "when a sentence is modified while in progress, the 'time' already served 'shall be credited upon any subsequent sentence [the defendant] may receive upon a new commitment for the same criminal act or acts' "].) The court also properly awarded the 169 days of presentence conduct credit awarded on defendant's original sentence.

E. **The Trial Court's Decision Not To Act on Defendant's Motion To Vacate the Judgment Is Not an Appealable Order**

To recap, after the trial court resentenced defendant and defendant filed his notice of appeal seeking review of that new sentence, defendant in pro. per. filed a motion to vacate the judgment. The court construed the motion as a resentencing petition under section 1172.1, and stated it would "take no further action" on the motion.

In this consolidated appeal, defendant raises no arguments specific to his motion, and does not dispute the trial court's conclusion that the motion was, in effect, a resentencing petition

27

under section 1172.1.  Defendant's appellate counsel acknowledges case law "holding that the summary denial of or nonresponse to a motion by the defendant under section 1172.1 does not result in an appealable order."

Counsel is correct.  A defendant "is not entitled to file a petition seeking relief from the court under . . . section [1172.1]" (§ 1172.1, subd. (c)), and a defendant who nevertheless files such an "unauthorized request for resentencing has no right to a ruling" (*People v. Hodge* (2024) 107 Cal.App.5th 985, 996, italics omitted).  Although a court that receives an unauthorized request for resentencing under section 1172.1 may exercise its discretion under the statute to recall the defendant's sentence on its own motion, an order declining to exercise such discretion is not appealable and we lack the authority to rule on the merits. (*People v. Brinson* (2025) 112 Cal.App.5th 1040, 1044; *People v. Roy* (2025) 110 Cal.App.5th 991, 994; *People v. Faustinos* (2025) 109 Cal.App.5th 687, 692; *Hodge*, at p. 999.)

We therefore dismiss the appeal from the trial court's decision not to act on defendant's motion.  We observe that defendant through his appeal from the new sentence has had full opportunity to challenge that sentence and the proceedings that led to it.

28

## DISPOSITION

The judgment in case No. B336058 is modified to omit 600 days of postsentence conduct credit. As modified, the judgment is affirmed. The trial court shall forward an amended abstract of judgment to the Department of Corrections and Rehabilitation, and the Department shall be responsible for calculating defendant's postsentence conduct credit.

The appeal in case No. B339829 is dismissed.

CERTIFIED FOR PUBLICATION.

                                        BENDIX, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.

29